Ray MARSHALL, Secretary of Labor, United States Department of Labor, Petitioner, No. 79–1822,

v.

SUN PETROLEUM PRODUCTS CO. and Occupational Safety and Health Review Commission, Respondents.

LOCAL 8–901 OF OIL, CHEMICAL AND ATOMIC WORKERS INTERNATIONAL UNION, Petitioner, No. 79–1828,

v.

OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION, Sun Petroleum Products and Secretary of Labor, Respondents.

Nos. 79–1822, 79–1828.

United States Court of Appeals, Third Circuit.

Argued March 20, 1980.

Decided May 29, 1980.

As Amended June 4, 1980.

On Rehearing Aug. 11, 1980.

Adams, Circuit Judge, dissented from denial of petition for rehearing.

Carin A. Clauss, Sol. of Labor, Baruch A. Fellner (argued), Benjamin W. Mintz, Associate Sol. for Occupational Safety and Health, Marleigh Dover Lang (argued), Allen H. Feldman, Counsel for Appellate Litigation, Dennis K. Kade, Asst. Counsel for Appellate Litigation, Lorelei J. Borland,

Atty., Marshall H. Harris, Regional Sol., U. S. Dept. of Labor, Philadelphia, Pa., for Secretary of Labor.

John A. McGuinn (argued), Gary L. Lieber, Farmer, Shibley, McGuinn & Flood, Washington, D. C., for Sun Petroleum Products Co.

George H. Cohen (argued), David M. Silberman, Bredhoff, Gottesman, Cohen & Weinberg, Washington, D. C., (Robert E. Wages, Asst. Gen. Counsel, Oil, Chemical & Atomic Workers Union, Denver, Colo. of counsel), for Local 8–901 of Oil, Chemical and Atomic Workers International Union.

Before ALDISERT and GIBBONS, Circuit Judges, and POLLAK, District Judge.*

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

Two petitions have been consolidated for decision at this time. In the appeal at No. 79–1822, the Secretary of Labor has petitioned for review of a decision by an equally divided vote of the Occupational Safety and Health Review Commission, which leaves intact an administrative law judge's approval of a settlement agreement between the Secretary and Sun Petroleum Products Company. The Secretary's petition requires us to decide whether he has the authority to withdraw from the settlement without the approval of the Commission. In the appeal at No. 79–1828, the union that represents the company's employees seeks review of the Commission's decision affirming the settlement.

These two surfaces issues do not disclose the several questions lurking as threshold problems that must be answered before we can reach the merits of the petitions. We have had the advantage of briefs and oral argument from the Secretary, the company, the union, and the Commission on the following issues, which we will address seriatim:

* Honorable Louis H. Pollak, of the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

Is a decision by two members of the Occupational Safety and Health Review Commission, divided equally, an order appealable to a court of appeals?

May the Commission participate in the court of appeals as an active party on a petition for review of its decision, or is it only a nominal respondent?

Does the Commission have the authority to review, and therefore the power to reject or approve, a settlement between the Secretary and an employer once a case has been scheduled for hearing before an administrative law judge?

If the administrative law judge has authority to review a settlement, what is the extent of the right, if any, of affected employees to participate in the hearing?

If the Commission has authority to review a settlement, does the Secretary have the right to withdraw a settlement once it has been reviewed and approved by an administrative law judge?

## I.

The facts giving rise to this litigation are undisputed. On June 19, 1976, two workers were killed in a gas explosion at Sun Petroleum's refinery in Marcus Hook, Pennsylvania. Following the incident, an OSHA compliance officer inspected the site. As a result of the inspection the Secretary of Labor issued a citation on August 3, 1976, charging Sun with, *inter alia*, a serious violation of 29 U.S.C. § 654(a)(1), for failing to monitor for combustible gases during turnaround operations.[1] The company was also served with two proposed penalties of $700 each and ordered to abate the violation immediately. Sun filed a timely notice of contest, and the Secretary issued a formal complaint on September 13, 1976. On September 30, 1976, Local Union 8–901 of the

Oil, Chemical and Atomic Workers International Union elected party status in accordance with Commission Rule 20, 29 C.F.R. § 2200.20. Party status was granted on October 21, 1976. Sun filed its answer to the Secretary's complaint on November 9, 1976.[2]

Prior to a hearing before an administrative law judge, the Secretary and Sun entered into a settlement agreement on January 10, 1977. The agreement was served on all parties and provided, *inter alia* that "gas test[s] will be taken by persons knowledgeable in the care, use, and reading of the instrument, and familiar with locations where combustible gases or vapors may be present or have collected." Appendix at 26. Also as part of the settlement, Sun agreed to develop a gas testing manual within ninety days and to institute engineering and procedural changes to reduce the likelihood of accidents in the refinery. In addition, a reduction in the penalties was agreed to and Sun moved to withdraw its notice of contest. On January 19, 1977, the union filed objections to the settlement agreement. Its primary objection was that the agreement failed to abate the hazard because the provision relating to gas testing did not specify that only workers classified as gas testers could test for combustible gases. The union claimed that without such a specification the company might use "unqualified" employees to conduct the testing.

On February 8, 1977, the ALJ conducted a prehearing conference during which both Sun and the Secretary asserted that the union's right to object to the settlement agreement was limited by 29 U.S.C. § 659(c) to challenging the reasonableness of the time for abatement contemplated by the

---

1. Section 654(a)(1) requires every employer, as defined by 29 U.S.C. § 652(5), to "furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees." A serious violation is defined by 29 U.S.C. § 666(j) as one that creates "a substantial probability that death or serious physical harm could result from a condition which ex-

ists . . . in such place of employment unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation."

2. On December 7, 1976, the Secretary was granted leave to file an amended citation and complaint, which Sun answered on December 16, 1976.

settlement. The union countered that the method of abatement was relevant to determine if the time for abatement was reasonable. Rejecting the union's argument, the ALJ issued an order on April 25, 1977, approving the settlement agreement. Because the record indicated that all abatement provisions, except for the preparation of the manual, were intended to be accomplished immediately, the ALJ reasoned that the union could not contend that the abatement time was unreasonable.

Pursuant to 29 U.S.C. § 661(i) and Commission Rule 91a, 29 C.F.R. § 2200.91a(d), Commissioner Cleary *sua sponte* directed review by the Commission. The direction for review requested briefs on two questions: whether the ALJ erred in concluding that the union did not challenge the reasonableness of the abatement period, and whether the ALJ erred in concluding that the Commission lacked jurisdiction to consider the union's objections to the settlement agreement. While the case was pending before the Commission, the Secretary re-evaluated the settlement agreement. After investigating the training program for gas testers, he determined that the agreement did not fully abate the hazard and was therefore contrary to public policy. By letter from the Solicitor of Labor on July 31, 1978, the Secretary told the company of his decision and notified Sun that he would inform the Commission of his changed position and request the Commission to remand the case for reconsideration. Accordingly, the Secretary requested that the matter be remanded to the ALJ for an opportunity to renegotiate the agreement or, alternatively, for a hearing on the merits of the citation.

Only two of the three Commission members reviewed the judge's decision.[3] Neither addressed the validity of the settlement agreement. Rather, they were divided on the disposition of the issues that had been directed for review. Chairman Cleary took the position that the ALJ's order should be vacated and the case remanded for consideration of the union's objections to the settlement agreement, while Commissioner Barnako would have affirmed because he agreed with the ALJ that the union's objections were beyond the scope of issues that the union could legitimately present for adjudication. The Commission resolved the impasse on April 27, 1979, by affirming the ALJ's order but accorded it only the precedential value of an unreviewed ALJ decision. These separate petitions for review by the Secretary and the union followed.

II.

As an initial matter, Sun challenges the jurisdiction of this court, arguing that the split vote by which the Commission affirmed the order of the ALJ did not constitute official action by a quorum of the Commission and is, therefore, not a final, reviewable order. Our jurisdictional basis for reviewing any Commission proceeding is 29 U.S.C. § 660, which provides that the courts of appeals shall have jurisdiction to review "an order of the Commission" issued pursuant to 29 U.S.C. § 659(c).

The method by which the Commission may take official action is prescribed by 29 U.S.C. § 661(e). Section 661(e) provides that "two members of the Commission shall constitute a quorum and official action can be taken only on the affirmative vote of at least two members." The Court of Appeals for the Ninth Circuit has interpreted this section to mean that an affirmance of an ALJ's order by an equally divided Commission is not reviewable by a court of appeals because it is supported by the affirmative vote of only one member, and is therefore not official action under section 661(e). *Willamette Iron & Steel Co. v. Secretary of Labor*, 604 F.2d 1177 (9th Cir. 1979), *cert. denied*, —— U.S. ——, 100 S.Ct. 1337, 63 L.Ed.2d 776 (1979); *Cox Brothers, Inc. v. Secretary of Labor*, 574 F.2d 465 (9th Cir. 1978). *See also Shaw Construction,*

3. The third commissioner, Commissioner Cottine, disqualified himself from participation in the case because, prior to his appointment as a member of the Commission, he had represented the union at the hearing before the ALJ.

*Inc. v. OSHRC*, 534 F.2d 1183, 1185–86 (5th Cir. 1976). We disagree with this analysis and prefer the reasoning of the Court of Appeals for the Fourth Circuit set forth in *George Hyman Construction Co. v. OSHRC*, 582 F.2d 834 (4th Cir. 1978). Speaking through Judge (now Chief Judge) Lay of the Eighth Circuit, the court reasoned that inasmuch as an ALJ's decision becomes the final reviewable order of the Commission if no member directs review, *see* 29 U.S.C. § 661(i),[4] then a divided Commission vote, *a fortiori*, would permit review. Responding to the quorum requirement argument relied on in *Willamette*, Judge Lay noted:

> A review of the legislative history of § 12 of the Act [29 U.S.C. § 661] reveals no intent to limit judicial review of the Commission's decisions. The evident intent in enacting § 12 was to speed review of administrative citations and to ensure independent review of those citations. . .
>
> Allowing the ALJ's decision to stand is analogous to the case of split decision affirmances by a court of appeals or the Supreme Court under which the lower court decision is allowed to stand.

582 F.2d at 837 n.5 (citation to legislative history omitted). In *Bethlehem Steel Corp. v. OSHRC*, 573 F.2d 157 (3d Cir. 1978), without having this issue directly raised, we considered the merits of a petition emanating from an equally divided Commission. We now hold that such Commission action constitutes a final order for purposes of review in this court. Like the decision of an equally divided court, the action of an equally divided Commission may be examined by the next link in the hierarchal chain of review. As it relates to the matter before us we interpret the quorum requirement of 29 U.S.C. § 661(e) to mean that, in the context of Commission review of an ALJ's decision, that decision will stand unless two Commission members vote to the contrary.

## III.

We must next decide if the Commission, one of the named respondents in these proceedings, has the authority to participate as an active party in this court on petitions for review of its decisions. The Department of Justice, which represented the Commission by brief and at oral argument, contends that the Commission does have the authority and argues that this conclusion is supported by the language of the statute as well as by the legislative history and purposes underlying the Occupational Safety and Health Act. This view has been endorsed by the Courts of Appeals for the Fourth and Fifth Circuits. *See Diamond Roofing Co. v. OSHRC*, 528 F.2d 645, 648 n.8 (5th Cir. 1976); *Brennan v. Gilles & Cotting, Inc.*, 504 F.2d 1255, 1266–67 (4th Cir. 1974).

The Secretary advances a contrary view. He argues that the Commission is only a nominal party before this court because Congress did not contemplate that the Commission would function as a litigator. Indeed, according to the Secretary, the role of the Commission was envisioned as exactly the opposite. The Court of Appeals for the Ninth Circuit supports his view. *Dale M. Madden Construction, Inc. v. Hodgson*, 502 F.2d 278, 280–81 (9th Cir. 1974).

In the context of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950, we faced a similar issue concerning the status of the Benefits Review Board. In determining that the Board was only a nominal respondent, we said:

> [T]he Benefits Review Board performs a review function which prior to the 1972 amendments was performed by the district courts. Certainly those courts had no duty or interest in defending their actions on appeal. There appears to be no reason why the Benefits Review Board should be thought to have such a duty or

4. This section provides that the "report of the [ALJ] shall become the final order of the Commission within thirty days after such report . . . unless within such period any Commission member has directed that such report

shall be reviewed by the Commission." 29 U.S.C. § 661(i). Thus, if Commissioner Cleary had not directed review in this case, the ALJ's decision would have become a final order of the Commission reviewable by this court.

interest. At best, it is a nominal respondent, and we have no concern that it will disregard a mandate in a case in which it is not so named. The motion of the Benefits Review Board to be dismissed as a respondent will be granted.

*Nacirema Operating Co., Inc. v. Benefits Review Board,* 538 F.2d 73, 75 (3d Cir. 1976).

In addition to relying on the *Diamond Roofing* and *Brennan* cases, the Commission isolates two statements from the legislative history of the Act made by Senator Javits, who sponsored the amendment creating the Commission, in which he compared the Review Commission to the Federal Trade Commission, a body that does have the authority to defend its orders in the courts of appeals. *See FTC v. Dean Foods Co.,* 384 U.S. 597, 607, 86 S.Ct. 1738, 1744, 16 L.Ed.2d 802 (1966).[5] Senator Javits stated:

> [The Review Commission] will have the same type of authority that the Federal Trade Commission exercises . . . .
> It is the traditional Federal Trade Commission type of procedure.
>
> .      .      .      .      .
>
> . . . The analogies between the qualifications of members and the authority of the Commission, and so forth, would be with the Federal Trade Commission.[6]

The Secretary contends that Senator Javits' analogy between the Review Commission and the FTC refers only to the FTC's role as an adjudicator, and that a reading of the surrounding text shows that the sponsor of the amendment clearly intended that the Review Commission function only as an adjudicative body and not as an administrative agency charged with the role of defending its decisions in the courts:

It [the amendment] creates a review commission which will deal with the complaints referred to it by the Secretary and which will have the same type of authority that the Federal Trade Commission exercises: The power to issue a cease and desist order which, if challenged within a given period of time, can be reviewed by the Circuit Court of Appeals. Its operation is stayed if the Circuit Court of Appeals so orders. If the Secretary desires to enforce the order through the contempt power, similarly, he can go into court in order to get the Circuit Court of Appeals to enter an order for the specific purpose, and then that order can be enforced through the contempt powers of the Circuit Court of Appeals. It is the traditional Federal Trade Commission type of procedure.

.      .      .      .      .

The panel would be three members appointed by the President for a specific term—2, 4, or 6 years. A term would normally be for 6 years. The analogies between the qualifications of members and the authority of the Commission, and so forth, would be with the Federal Trade Commission.[7]

We are satisfied that the Secretary's position is the correct interpretation of the legislative intent. For example, Senator Javits argued during the floor debate:

> One other point which is critically important: What is the difference between a board to establish the standards and a commission to enforce them, and why, in my judgment, is it more important to have an autonomous and independent commission even than to have some form of board to promulgate certain standards?

---

**5.** In *Dean Foods* the Supreme Court remarked: "There is no explicit statutory authority for the [Federal Trade] Commission to appear in judicial review proceedings, but no one has contended it cannot appear in the courts of appeals to defend its orders. . . . Such ancillary powers have always been treated as essential to the effective discharge of the Commission's responsibilities." 384 U.S. at 607, 86 S.Ct. at 1744.

**6.** Subcomm. on Labor of the Senate Comm. on Labor and Public Welfare, 92d Cong., 1st Sess., Legislative History of the Occupational Safety and Health Act of 1970 at 462, 465 (Comm. Print 1971) [hereinafter cited as Legislative History].

**7.** Legislative History, *supra,* note 6, at 462, 465.

The reason is this: The enforcement of orders is an adjudicatory act, whereas the establishment of standards is a deliberative act. There are serious penalties involved for the individual enterprise. It is a case by case proposition. It does not apply across the board to every member of industry. One particular rubber company, for example, can be materially disadvantaged by a finding against it in a given case, whereas established standards are an across-the-board proposition. It is entirely practical to be rather deliberate about that in hearings before the Secretary of Labor or officials of that Department. They can go into the thing deeply and if they want to contest it there is plenty of opportunity to go into court and contest the rule. But enforcement of an order or the making of an order is an adjudicatory action.[8]

For several additional reasons, we are persuaded that a detailed analysis of the legislative history further sustains the Secretary's position.

### A.

First, we are impressed that the very interpretation urged upon this court by the Commission was contained in two earlier OSHA bills that were not enacted by Congress. The Javits bill, S. 2788, and the Ayres bill, H.R. 13373, sought to establish a separate national board with both rule making and adjudicatory authority.[9] Both bills expressly provided that when the Secretary appealed from a board order, the board was entitled to be represented on appeal by the Department of Justice:

> Except as provided in section 518(a) of title 28, United States Code, relating to litigation before the Supreme Court and the Court of Claims, the Solicitor of Labor may appear for and represent the Secretary and the Board in any civil litigation brought under this Act but all such litigation shall be subject to the direction and control of the Attorney General: *Provided,* That in any appeal of any action of the Board brought by the Secretary . . ., the Solicitor shall represent the Secretary; the Attorney General shall represent the Board in such proceedings.

Legislative History, *supra* note 6, at 51, 699. Both bills died in their respective committee chambers. The present Act can be traced to S. 2193, the Williams bill, reported by the Senate Committee on Labor and Public Welfare (now the Human Resources Committee) and to H.R. 16785, the Daniels bill, reported by the House Committee on Education and Labor. These bills vested in the Secretary of Labor the authority to investigate, prosecute, and adjudicate employer violations, as well as the power to promulgate standards.[10] The Williams bill was amended on the Senate floor on the motion of Senator Javits to provide for the existence of an independent adjudicatory tribunal, the Review Commission, to hear disputes with respect to citations issued by the Secretary of Labor. The Williams bill, including the Javits amendment, was ultimately enacted. Pub.L.No. 91–596, 84 Stat. 1590 (1970).

Certain important conclusions concerning the nature of the Review Commission can be drawn by comparing the Javits amendment to the Williams bill with S. 2788, the earlier Javits-sponsored bill. Unlike the board proposed in S. 2788, the Review Commission that was established by the Javits amendment to the Williams bill was assigned no rulemaking authority. As Senator Javits stressed, the Review Commission was designed to perform a single function:

> [It is to be a]utonomous and independent. . . . [I]t is expressly set forth to be an independent commission, established for the purpose of dealing with these complaints and passing on them.
>
> .   .   .   .   .
>
> . . . [W]e have an established practice of quasi-judicial character and a sep-

---

8. Legislative History, *supra*, note 6, at 464.

9. Legislative History, *supra*, note 6, at 36–49, 684–97.

10. Legislative History, *supra* note 6, at 166–81, 865–76.

aration, a degree of autonomy in the commission which distinguishes it from authorities who have done [the] investigating, the [reporting], and so forth, in respect of the original complaint of the violation.[11]

The Review Commission's mandate, as Senator Javits proposed it, was therefore strictly limited to adjudication. Moreover, neither Senator Javits' original bill nor his amendment to the Williams bill ever contemplated Commission representation in judicial proceedings when the Secretary of Labor was not the appealing party. The clear implication to be drawn is that only the Secretary would have authority to defend agency decisions. Significantly, the Javits amendment to the Williams bill did not authorize the Department of Justice to represent the Commission in judicial proceedings, even when the Secretary was the party appealing from a Commission decision. This omission is critical since, as already noted, Senator Javits specifically provided in his earlier bill that the board be afforded such representation.

Second, an examination of the floor debates and the conference committee comments also supports the Secretary's position. In reporting the conference committee action to the Senate, Senator Prouty observed:

> The original bills introduced in both bodies provided that the Secretary of Labor would promulgate all health and safety standards and would also be responsible for deciding appeals from employers who contested violations found or penalties assessed by inspectors employed by the Department of Labor.

The conference report, Mr. President, adopts provisions contained in both the House- and Senate-passed bills establishing an independent Commission to review all contested cases involving violations found or penalties assessed by the Secretary of Labor. The Commission's order in turn is subject to judicial review in an appropriate U. S. court of appeals.[12]

### B.

Although the Review Commission vigorously asserted at oral argument that it is a major policy-making body under OSHA, the fact is that the Act confers all rulemaking and policymaking responsibilities on the Secretary and not the Commission.[13] The Secretary possesses authority to promulgate occupational safety and health standards, 29 U.S.C. § 655, to conduct inspections and investigations, *id.* § 657, to issue citations, *id.* § 658, to propose penalties, *id.* § 659(a), to prescribe abatement periods, *id.* § 658(a), to promulgate regulations, *id.* § 657(g)(2), and to perform the day-to-day functions important to the administration of the Act, its programs, and policies. By contrast, the Commission's jurisdiction is triggered only when a cited employer files a notice of contest to a citation issued by the Secretary or when an employee challenges an abatement date as unreasonable. Its sole function is then to issue orders, based on findings of fact, that affirm, modify, or vacate the Secretary's citations and proposed penalties, to assess penalties, or to direct other appropriate relief. *See* 29 U.S.C. §§ 659(c), 666(i).[14]

---

**11.** Legislative History, *supra* note 6, at 462, 464.

**12.** Legislative History, *supra* note 6, at 1149. *See also id.* at 1147 (remarks of Senator Williams) ("This provision was designed to separate the adjudication of violations from the other functions performed by the Secretary of Labor"); *id.* at 1151 (remarks of Senator Javits) ("the bill provides for an independent three-man commission to adjudicate enforcement cases"); *id.* at 1212 ("the establishment of an independent occupational safety and health appeals commission to handle adminis-

trative adjudications") (remarks of Rep. Steiger).

**13.** By rulemaking authority, we refer only to the power to promulgate standards imposing substantive occupational safety and health obligations on employers, and not to the power to devise procedural rules for administrative hearings under the Act. The Commission is given authority to promulgate procedural rules for hearings. *See* 29 U.S.C. § 661(f).

**14.** For purposes of proceedings before it, the Commission is authorized, upon application of any party to the proceedings, to subpoena wit-

Moreover, the Act grants the Secretary exclusive authority to enforce Commission decisions in the courts of appeals. 29 U.S.C. § 660(b). Section 14 of the Act authorizes only the Secretary to conduct OSHA civil litigation, subject to the direction and control of the Attorney General. 29 U.S.C. § 663. The Commission is not so entitled. Nor can it claim to participate as a party in appellate proceedings by virtue of being "adversely affected or aggrieved" by its own decision. See 29 U.S.C. § 660(a).. At every turn, then, the statute denies the Commission the authority to appear in the courts of appeals.

### C.

█ We therefore conclude that the Review Commission was designed strictly as an independent adjudicator, with no rulemaking authority other than for procedural rules for hearings, no direct policy role in administering the Act, and accordingly, no right to independent representation in judicial review procedures before this court.

### IV.

Having determined that the Review Commission is an adjudicatory tribunal, we must now meet the Secretary's contention that the Commission has no jurisdiction to review or modify settlement agreements. The Secretary argues that OSHA delegates to the Commission no specific authority to review settlements, as has been delegated to agencies by other statutes. For example, under the Federal Mine Safety and Health Amendments Act of 1977, "[n]o proposed penalty, which has been contested before the [Federal Mine Safety and Health Review] Commission . . . shall be compromised, mitigated, or settled except with the approval of the Commission." 30 U.S.C. § 820(k). The Longshoremen's and Harbor Workers' Compensation Act specifically provides when settlements may be approved by the Secretary. 33 U.S.C. § 908(i)(B). Under the Antitrust Procedures and Penal-

ties Act, Congress described in detail the procedures district courts should follow in determining whether a settlement comports with the public interest. See 15 U.S.C. §§ 16(a)–16(i).

But the Secretary's most forceful argument is based on the legislative schema of OSHA under which a self-executing order of the Secretary automatically becomes final unless the employer or the employees' representative contests it. Section 10(c) of the Act, 29 U.S.C. § 659(c), provides that if either the employer or the employees' representative files a notice of contest to a citation or proposed penalty, the notice of contest shall be forwarded to the Commission, which shall afford an opportunity for a hearing and thereafter "issue an order, based on findings of fact, affirming, modifying or vacating the Secretary's citation or proposed penalty, or directing other appropriate relief." The Act explicitly provides, however, that citations and abatement dates proposed by the Secretary shall become enforceable final orders without Commission action if neither the cited employer nor the employees' representative files a notice of contest. Section 10(a) of the Act, 29 U.S.C. § 659(a), provides that if an employer fails to file a notice of contest within fifteen working days of receipt of a citation or notice of penalty from the Secretary, the citation or penalty "as proposed, shall be deemed a final order of the Commission and not subject to review by any court or agency." Section 10(b), 29 U.S.C. § 659(b), outlines an identical finality provision for notices issued by the Secretary alleging that an employer has failed to correct a violation within the abatement period. The Secretary thus argues that these sections, 29 U.S.C. §§ 659(a), (b), and (c), establish two basic points: that the Review Commission has jurisdiction only over cases in which a notice of contest is filed, and that the Commission's only statutory function is to adjudicate issues raised by a notice of contest.

nesses or testimony and, if necessary, to apply to the appropriate United States district court for a directing order. See 29 U.S.C. §§ 661(g),

(h) (incorporating by reference 29 U.S.C. § 161).

We are prepared to accept most of the Secretary's arguments because we agree that in the absence of a contest, neither the Review Commission nor the ALJ has jurisdiction to review a settlement agreement entered into between the Secretary and an employer. Moreover, we agree that even after the employer files a notice of contest, if no employee files a notice or has not acquired party status under 29 C.F.R. § 2200.20, then the Commission would lack jurisdiction to review any settlement entered into between the Secretary and the employer. If an employee formally expresses an interest in the proceedings, however, we believe that the Commission would have jurisdiction to review the settlement in order to protect that interest.

The Act provides that the Commission is required to afford an opportunity for a hearing upon the happening of either of two events: (1) if the employer notifies the Secretary that he intends to contest a citation, or (2) if "any employee or representative of employees files a notice with the Secretary alleging that the period of time fixed in the citation for the abatement of the violation is unreasonable." 29 U.S.C. § 659(c). If settlement is reached after either of these events occurs, but prior to the scheduled hearing, the ALJ would have jurisdiction to review the settlement, but only for the limited purpose of entertaining objections from the employee or employees' representative that the abatement period proposed by the settlement is unreasonable.

■ If follows, then, that if the ALJ had jurisdiction in this case, the Review Commission would have jurisdiction for this same limited purpose—to review the settlement as provided in 29 C.F.R. §§ 2200.91 and 2200.91a. Accordingly, we hold that if no employer notice of contest has been filed, or if an employee or his representative has not filed a notice to challenge the abatement period prior to the time when a settlement is entered into between the Secretary and the cited employer, then the Commission has no jurisdiction to review the settlement; but once either notice has been properly filed, the ALJ and, later, the Review Commission would have jurisdiction to review the settlement to a limited extent, to-wit, to determine whether the time fixed in the citation for the abatement of the violation is unreasonable.

## V.

■ Our view, of necessity, rejects the argument advanced by Sun that the union in this case was not a proper party in the Commission proceedings because it failed to file a notice with the Secretary within fifteen days of the citation as required by section 10(c) of the Act, 29 U.S.C. § 659(c).[15] We do not read section 10(c) so grudgingly. If the employer files a notice of contest, as happened in this case, then the union is not required to file its notice within fifteen days of the citation because the employer's notice of contest has effectively triggered a

15. Section 10(c) provides:

If an employer notifies the Secretary that he intends to contest a citation issued under section 658(a) of this title or notification issued under subsection (a) or (b) of this section, *or if, within fifteen working days of the issuance of a citation under section 658(a) of this title, any employee or representative of employees files a notice with the Secretary alleging that the period of time fixed in the citation for the abatement of the violation is unreasonable,* the Secretary shall immediately advise the Commission of such notification, and the Commission shall afford an opportunity for a hearing (in accordance with section 554 of Title 5 but without regard to subsection (a)(3) of such section). The Commission shall thereafter issue an order, based on findings of fact, affirming, modifying, or

vacating the Secretary's citation or proposed penalty, or directing other appropriate relief, and such order shall become final thirty days after its issuance. Upon a showing by an employer of a good faith effort to comply with the abatement requirements of a citation, and that abatement has not been completed because of factors beyond his reasonable control, the Secretary, after an opportunity for a hearing as provided in this subsection, shall issue an order affirming or modifying the abatement requirements in such citation. The rules of procedure prescribed by the Commission shall provide affected employees or representatives of affected employees an opportunity to participate as parties to hearings under this subsection.
29 U.S.C. § 659(c) (emphasis added).

hearing. Once the hearing mechanism is instituted, affected employees may elect to participate as parties at any time prior to the commencement of the hearing before the ALJ as provided by 29 C.F.R. § 2200.-20.[16] This rule of procedure was duly promulgated by the Commission under authority granted by 29 U.S.C. § 659(c). The fifteen-day time limit for employee filing under section 10(c) is operative only when the employer has not contested the citation and a hearing is desired by the employee or his representative. Under these circumstances, the time limit operates as a fail-safe mechanism to insure employees the opportunity for a hearing.

■ Under our interpretation we also reject the union's contention that affected employees have a right to be heard on matters other than the reasonableness of the abatement period. The Senate Committee Report makes clear that section 10(c) "gives an employee or representative of employees a right, whenever he believes that the period of time provided in a citation for abatement of a violation is unreasonably long, *to challenge the citation on that ground.*" [17] Moreover, the legislative history discloses no support for the union's position. Indeed, any evidence of congressional intent on this point contradicts the union's assertion that it is entitled to be heard on matters other than the abatement period.[18] We therefore conclude that any challenge advanced by an employee is limited to an attack on the reasonableness of the abatement period.

**16.** The regulation provides:
§ 2200.20 Party status.
(a) Affected employees may elect to participate as parties at any time before the commencement of the hearing before the judge, unless, for good cause shown, the Commission or the judge allows such election at a later time. See also § 2200.21.
(b) Where a notice of contest is filed by an employee or by an authorized employee representative with respect to the reasonableness of the period for abatement of a violation, the employer charged with the responsibility of abating the violation may elect party status at any time before the commencement of the hearing before the judge. See also § 2200.21.

**17.** Legislative History, *supra* note 6, at 155 (emphasis added).

## VI.

We now turn to the final question for decision which, because of the particular facts in this case, controls the disposition of these appeals. We must determine the extent of the Secretary's *ex parte* authority to withdraw from a settlement agreement he has entered into with a cited employer. Sun argues that there is no justification to permit the Secretary this authority. It argues that the Secretary has disclosed no newly discovered evidence obtained after the bargain was struck to support its present position that the agreement does not protect the public interest; nor is there evidence, or even an assertion, that the procedures implemented by Sun in reliance on the agreement have been ineffective. The company contends further that this court should not disregard the substantial investment Sun has made to implement the agreement.

The Secretary responds that it is his duty to withdraw from this settlement because he has re-evaluated the information supporting the settlement and has considered reports from a subsequent inspection of Sun's refinery and other information,[19] and has determined that the settlement does not adequately protect the public interest. The Secretary's justification for his withdrawal from the settlement was expressed in a letter to Sun from the Solicitor of Labor on

**18.** For example, Senator Williams succinctly *defined the right of employees to appeal from* the issuances of a citation and proposed penalty: "Employees are also given appeal rights *when they believe that an unreasonably long period of time has been allowed for abatement of a violation.*" Legislative History, *supra* note 6, at 414 (emphasis added).

**19.** The Secretary also considered a labor arbitration decision in which a provision contained *in Sun's collective bargaining agreement with* Local 8–901 was interpreted to preclude dock personnel from acting as gas testers for safety reasons. The arbitrator's award in favor of the union was ordered enforced by the district court. *See Sun Oil Co. v. Local 8–901, Oil, Chemical, and Atomic Workers' International Union,* 421 F.Supp. 1376 (E.D.Pa.1976).

July 31, 1978, when the proceedings were still active before the Commission: "In sum, the Department of Labor has concluded that both the settlement entered into by the Philadelphia Regional Solicitor and Sun Oil and Sun Oil's implementation of that settlement provide for less than adequate gas testing at the worksite and therefore fail to abate the hazard cited." [20]

The chronology of events is important. The settlement agreement was reached on January 10, 1977, three months before the ALJ's decision approving the settlement on April 25, 1977. The direction for review by the Commission was ordered on May 24, 1977. On July 31, 1978, the Secretary attempted to withdraw from the agreement; and the Commission's divided-vote affirmance followed on April 27, 1979. Thus, the withdrawal was attempted prior to the decision of the Review Commission.

We are persuaded that, because of the Secretary's unique role in effectuating the purposes of OSHA, he has the power to withdraw from any settlement agreement prior to the entry of a final decision by the Commission. As the Supreme Court has noted, the Act creates public rights that are to be protected by the Secretary through government enforcement in the context of a complex administrative schema. *Atlas Roofing Co. v. OSHRC*, 430 U.S. 442, 444–47, 97 S.Ct. 1261, 1263–65, 51 L.Ed.2d 464 (1977). "Enforcement of the Act is the Secretary's responsibility." *Dale M. Madden Construction, Inc. v. Hodgson*, 502 F.2d 278, 280 (9th Cir. 1974). He is the Act's prosecutor. *Atlas Roofing*, 430 U.S. at 445–47, 97 S.Ct. at 1264–65. Necessarily included within these prosecutorial powers is the discretion to settle citations issued against employers and to compromise, mitigate or settle any penalty assessed under the Act. 29 U.S.C. § 655(e). When entering into settlement agreements, the Secretary seeks to implement the public policy of the Act which is to "assure so far as possible every working man and woman in the Nation safe and healthful working conditions." 29 U.S.C. § 651(b). Similarly, re-evaluation of a settlement agreement may indicate to the Secretary that the agreement does not effectuate that purpose.

Permitting the Secretary to withdraw from a settlement agreement prior to final Commission action, we think, comports with the congressional mandate that the Secretary be entrusted with the basic responsibilities for administering the Act. As Senator Williams stated in the floor debate, there was a conscious decision to rest this responsibility in the Secretary and not in a separate board: "[T]he majority of our committee wisely concluded that the Secretary of Labor ought to be assigned the responsibility for promulgating and enforcing the standards under this act, subject to those provisions of the Administrative Procedure Act which insure that considerations of due process are fully satisfied." [21] In interpreting the Act, courts must always heed the legislative purpose to insure that there will be coherent administration of the Act. We must heed Senator Williams' admonition to avoid a "diffusion of responsibility and accountability as to seriously undermine the effectiveness of this program." [22]

Although we conclude that the Secretary does have the power to withdraw from a settlement prior to final Commission action, dictates of fairness and justice require that all parties be place in the position of *status quo ante* the issuance of the citation. A new inspection must be conducted pursuant to 29 U.S.C. § 657(a), and if circumstances warrant, the Secretary must issue a new citation pursuant to 29 U.S.C. § 658. Thus, neither the employer nor any affected employees will be prejudiced by the unilateral action of the Secretary. Any expenditures or implementation by the employer of the aborted agreement will be reflected in its worksite and therefore capable of being considered *ab initio* by the compliance inspector. Moreover, by returning the parties

---

**20.** Brief for Secretary of Labor in No. 79–1822. Addendum A at 4.

**21.** Legislative History, *supra* note 6, at 417.

**22.** *Id.*

to their original position, the employer will not be required to defend stale citations under conditions in which circumstances may have changed between the time of the issuance of the citation and the withdrawal from the settlement.

Accordingly, we conclude that based on the important role placed on the Secretary by congressional mandate to protect the public interest in the safety of the workplace, the Secretary may withdraw from a settlement agreement prior to the entry of a final order by the Commission.

## VII.

The Secretary's petition for review in No. 79–1822 will be granted and the cause remanded to the Commission with a direction that the Secretary be given sixty days to notify the Commission whether he elects to withdraw from the settlement or to proceed in some other manner in accordance with this opinion.[23] The appearance of the Department of Justice as counsel for the Commission will be stricken and the Commission will be removed as a party from these proceedings. The union's petition for review at No. 79–1828 will be denied.

LOUIS H. POLLAK, District Judge, concurring in part and dissenting in part.

With the bulk of the court's exposition of the Occupational Safety and Health Act, as it applies to the facts of this tortuous administrative proceeding, I am in accord: I agree that the objections filed by Oil Workers Local 8–901 to the settlement agreement entered into by the Secretary of Labor and Sun Oil vested in the administrative law judge, and thereafter in the Occupational Safety and Health Review Commission, jurisdiction to review the settlement agreement. And I agree that the Commission's affirmance—by the divided vote of the two participating Commissioners—of the administrative law judge's rejection of the Oil Workers' challenge to the settlement agreement, was a Commission decision appealable to this court. I also agree that the Commission is only a nomi-

nal party to this appeal, having no standing to appear here to defend its decision. Moreover, I agree that prior to final Commission action the Secretary had authority to withdraw from a settlement agreement which he had found, on reconsideration, would not sufficiently promote the purposes of the underlying legislation.

But I disagree with the court's rejection of "the union's contention that affected employees have a right to be heard [in employer-initiated proceedings before an administrative law judge and the Commission] on matters other than the reasonableness of the abatement period." P. 1186. Since the court's position on this issue can be expected to have significant impact on the scope, and hence the content, of Commission adjudication, I think it appropriate to explain my views on this issue and on certain closely related issues.

## A.

Section 10(c) of the Act is the key to the entitlement of employees, or of a union representing employees, to participate in hearings before the Commission. Section 10(c) provides in its entirety as follows:

If an employer notifies the Secretary that he intends to contest a citation issued under section 658(a) of this title or notification issued under subsection (a) or (b) of this section, or if, within fifteen working days of the issuance of a citation under section 658(a) of this title, any employee or representative of employees files a notice with the Secretary alleging that the period of time fixed in the citation for the abatement of the violation is unreasonable, the Secretary shall immediately advise the Commission of such notification, and the Commission shall afford an opportunity for a hearing (in accordance with Section 554 of Title 5 but without regard to subsection (a)(3) of such section). The Commission shall thereafter issue an order, based on findings of fact, affirming, modifying, or vacating the Secretary's citation or proposed pen-

23. In view of our analysis, we perforce deny Sun's motion to strike the Secretary's brief.

alty, or directing other appropriate relief, and such order shall become final thirty days after its issuance. Upon a showing by an employer of a good faith effort to comply with the abatement requirements of a citation, and that abatement has not been completed because of factors beyond his reasonable control, the Secretary, after an opportunity for a hearing as provided in this subsection, shall issue an order affirming or modifying the abatement requirements in such citation. The rules of procedure prescribed by the Commission shall provide affected employees or representatives of affected employees an opportunity to participate as parties to hearings under this subsection.

29 U.S.C. § 659(c)

It is apparent that the first sentence of Section 10(c) contemplates two types of hearings. The first type of hearing contemplated by Section 10(c)'s first sentence is one triggered by an employer who notifies the Secretary of an intention to contest a citation; in that hearing, employees (or a union thereof) are authorized "to participate as parties" by virtue of the last sentence of Section 10(c). The second type of hearing contemplated by Section 10(c)'s first sentence is one triggered by employees (or a union thereof) who notify the Secretary of their contention "that the period of time fixed in the citation for the abatement of the violation is unreasonable."

Manifestly, the second type of hearing—that initiated by employees (or a union)—is tied firmly to the limited agenda set by the statute: the reasonableness of the abatement period.[1] *International Union, United Auto, etc., v. United States Occupational Safety & Health Review Com.*, 557 F.2d 607 (7th Cir. 1977). But nothing in the text of the statute confines employee/union participation "as parties" in the first type of hearing—that initiated by an employer contesting a citation—to questions relating to the reasonableness of the abatement period.[2] And, indeed, such a limitation would seem anomalous: Typically, an employer contests the Secretary's citation because the employer disputes the Secretary's finding of a violation—a finding which in many cases flows from an employee or union complaint which the Secretary is by statute required to inquire into. And it would, indeed, be odd if the words of Section 10(c) precluded employees from pursuing at the adjudicative phase of OSHA enforcement the interests the Act encourages them to monitor at the investigative phase.[3]

1. Indeed, even if the employer elects, pursuant to Commission Rule 20, 29 C.F.R. § 2200.20(b), to participate in this form of employee-initiated contest, this intervention cannot broaden the relatively narrow inquiry which is the focus of this species of Commission hearing.

2. The fact that the Act specifically provides for employee contests on the reasonableness of the abatement period, does not, in itself, suggest any constraint on the interest of employees in regard to the existence of a violation. The Act contemplates that the Secretary's citation be in two parts: The citation must (1) describe with particularity the nature of the violation and, (2) fix a reasonable period of abatement. 29 U.S.C. § 658(a). Employees cannot themselves be cited as violators of the Act, *Atlantic & Gulf Stevedores v. OSHRC*, 534 F.2d 541 (3d Cir. 1976), and it is hard to image a situation where employees would wish to object to the Secretary's finding of a violation. (It is of course clear that employees may not invoke the Commission's jurisdiction over the Secretary's finding of no violation.) Thus, it is only in regard to the length of the abatement period that the Secretary's views, as formally announced in his citation, might, in some instances, be perceived as adverse to the interest of employees. But this does not mean that employees would not have a significant interest in intervening in an employer-initiated contest in order (1) to support the Secretary's finding of a violation, and (2) to encourage the adoption of an effective remedial plan.

3. The provisions for employee input into the enforcement process which are contained in the Act, apparently comprise a cohesively structured and comprehensive legislative plan for employee participation, and are not the product of haphazard drafting. As referred to the Subcommittee on Labor, S. 2193 made no allowance for employee input. That Subcommittee added provisions for the full measure of employee participation ultimately incorporated in the final bill:

Employees who believe that a violation exists may request an inspection by giving notice to the Secretary. If the Secretary determines that there are reasonable grounds to believe a violation exists, he must conduct such inspection as soon as practicable. 29 U.S.C. § 657(f)(1). If

The anomalous limitation not expressed in the text of Section 10(c) is supplied, so the court insists, by the report of the Senate Committee on Labor and Public Welfare. It is, of course true, as the court notes, that the Committee's report recites that Section 10(c) "gives an employee or representative of employees a right, whenever he believes that the period of time provided in a citation for abatement of a violation is unreasonably long, to challenge the citation on that ground." But the report says more. The entire relevant passage, including the language relied on by the court, shows the Committee's understanding that an employee/union challenge to the length of the proposed abatement period is but one of two modes of employee/union participation in Commission proceedings—two *distinct* modes linked by the conjunctive "also."

If the employer decides to contest a citation or notification, or proposed assessment of penalty, the Secretary must afford an opportunity for a formal hearing under the Administrative Procedure Act. Based upon the hearing record the Secretary shall issue an order confirming, denying, or modifying the citation, notification, or proposed penalty assessment. The procedural rules prescribed by the Secretary for the conduct of such hearings must make provision for affected employees or other representatives to participate as parties.

Section 10(c) *also* gives an employee or representative of employees a right, whenever he believes that the period of time provided in a citation for abatement of a violation is unreasonably long, to challenge the citation on that ground. Such challenges must be filed within 15 days of the issuance of the citation, and an opportunity for a hearing must be provided in similar fashion to hearings when an employer contests. The employer is to be given an opportunity to participate as a party.[4] (Emphasis added.)

This very litigation illustrates the anomaly generated by confining the employee/union role in employer-initiated proceedings to a challenge to the reasonableness of the abatement period. Local 8–901's difficulty

he finds no reasonable grounds for an inspection, he must notify the employees in writing. *Id.* Provision is made to allow a representative of the employees to accompany the Secretary or his authorized representative during the physical inspection of the workplace. 29 U.S.C. § 657(e). If, upon inspection, the Secretary believes that an employer has violated the Act, "he shall with reasonable promptness issue a citation to the employer." 29 U.S.C. § 658(a). In those instances in which the Secretary finds no violation, the Act provides that the Secretary shall, by regulation, establish procedures for the informal review of his decision, and he must furnish to the employees requesting review a written statement of his reason for the final disposition of the case. 29 U.S.C. § 657(f)(2).

Thus, "while guarding against frivolous complaints," Legislative History, *infra* note 4, at 432 (Remarks of Senator Williams), by channeling employee grievances through the impartial office of the Secretary, the Act allows employees to translate their meritorious concerns for safety into employer citations. Indeed, in cases in which the employer does not contest the citation, the employees will thus have brought their grievance to the only fruition which the Act contemplates—the final determination of a violation, a schedule for abatement, and the assessment of a penalty. 29 U.S.C. § 659(a). The court holds, however, that the

employees' interest in and contribution to the enforcement process, so elaborately protected through the initial stages, abruptly ceases at the moment the employer opposes their efforts by filing a notice of contest. It is my view that by providing employees the right to elect party status, Congress intended to ensure that the employees' central role in the enforcement of the Act would continue in the adjudicative arena.

4. Subcomm. on Labor of the Senate Comm. on Labor and Public Welfare, 92d Cong., 1st Sess., Legislative History of the Occupational Safety and Health Act of 1970 at 154–155 (Comm. Print 1971) [herein cited as Legislative History]. The bill referred from committee, which is addressed in the above passage, contemplated hearings within the Department of Labor; hence, the allusion in the excerpt to hearings before the Secretary. As detailed in the opinion of the court, however, the enforcement scheme was modified on the Senate floor to provide for review before an independent administrative body in the form of the Review Commission. Apart from the substitution of the Review Commission for the Secretary, procedures set forth in the final Act are, in all relevant respects, identical to those which are the subject of this Committee Report.

with the remedy incorporated in the settlement agreement was not that its effective date was remote. To the contrary, the settlement agreement contemplated that the remedy would go into effect at once. The problem, as Local 8–901 saw it, was that the remedy agreed upon by Sun and the Secretary would be totally inefficacious—in that monitoring potential fire hazards at the refinery would be placed in the hands of employees whom the union deemed to be inadequately trained to fulfill their critically important tasks. By not permitting the union to pursue these issues, the administrative law judge seems to have guaranteed that the hearing on the settlement agreement would be an antiseptic ritual leading to perfunctory approval. At all events, the very shortcomings in the agreed remedy which the administrative law judge would not let the union probe were those which led the Secretary, more than a year later, to withdraw his assent from the settlement agreement.

The court appears to acknowledge that Local 8–901's timely request for party status conferred on the administrative law judge, and ultimately on the Commission itself, jurisdiction to entertain the union's objections on all matters with respect to which it had an interest under the Act. My difference with the court is that I take a more spacious view of the interest assertable by the union in an employer-initiated proceeding. Before the administrative law judge, the union objected that the settlement proposed by Sun and the Secretary was inconsistent with the purposes of the Act in that it would fail to abate the cited condition. Since I find that this was a subject well within the scope of the union's permissible concerns, I would hold that the union was entitled not only to have its objections considered, but also to support those objections through the presentation of evidence in a hearing before the administrative law judge.[5]

5. This approach comports with procedures applied to the settlement of cases before the National Labor Relations Board. See *Marine Engineers Beneficial Assn. v. NLRB*, 202 F.2d 546, 549 (3d Cir. 1953), *cert. denied*, 346 U.S. 819, 74 S.Ct. 32, 98 L.Ed. 345; *Terminal Freight Cooperative Ass'n v. NLRB*, 447 F.2d 1099, 1011 (3d Cir. 1971), *cert. denied*, 409 U.S. 1063, 93 S.Ct. 553, 34 L.Ed.2d 516 (1972); *Leeds & Northrup Company v. NLRB*, 357 F.2d 527 (3d Cir. 1966). In *Marine Engineers*, this court grappled with the then unfamiliar role of the charging party in Labor Board proceedings:

> The difficulty in this case comes because in changing times and the evolution of administrative procedure our old analogies are not in point. The charging party in a labor case is something like a complaining witness in a criminal case. But he is certainly much more than that for a complaining witness is certainly not entitled to appeal even when an appeal is allowed for the prosecution in a criminal case. On the other hand, the charging party is not like the ordinary plaintiff in a lawsuit, who does not have to have anybody's permission to go ahead with his action if he can pay the required fees. This is something in between.

202 F.2d at 549. The court went on to hold that the charging party in a Labor Board case had a right to be heard on settlement objections to present evidence on that issue, and to appeal an adverse ruling. *Id*. Other circuits are generally in accord. See *George Ryan Co. v. NLRB*, 609 F.2d 1249 (7th Cir. 1979); *ILG-*

*WU v. NLRB*, 501 F.2d 823 (D.C.Cir.1974); *NLRB v. ODCAW*, 476 F.2d 1031 (1st Cir. 1973); *Concrete Materials of Georgia v. NLRB*, 440 F.2d 61 (5th Cir. 1971); *NLRB v. Electrical Workers Local 357*, 445 F.2d 1015 (9th Cir. 1971).

OSHA procedures, and those under the National Labor Relations Act are, of course, not strictly analogous. The NLRA does not, in terms, provide that the charging party can participate as a party to Board proceedings. Nor does the NLRA provide the charging party with the elaborate protections afforded employees under OSHA. Seemingly of even greater significance, in contrast with the position of the Secretary under the OSHA scheme, the General Counsel of the National Labor Relations Board enjoys the statutory discretion not to issue a complaint even if there exists a violation of the Act. Each of these distinctions would appear to suggest broader rights for employees under OSHA, than under the NLRA. But under Labor Board rules, once the General Counsel issues a complaint, "the charging party is accorded formal recognition: he participates in the hearings as a 'party,' . . . he may call witnesses and cross-examine others, may file exceptions to any order of the trial examiner . . . ." *International Union, etc. v. Scofield*, 382 U.S. 205, 219, 86 S.Ct. 373, 382, 15 L.Ed.2d 272 (1965). It is improbable that Congress, writing against this backdrop of the National Labor Relations Act practice, could have intended any lesser role for the complaining employees under OSHA by explicitly providing them the right "to participate as a party."

## B.

Although the court imposes limits I do not subscribe to on the scope of employee/union party status in a proceeding initiated by the employer's contest of a citation issued by the Secretary, the court acknowledges that employee/union assertion of party status gives the administrative law judge and the Commission a revisory jurisdiction—at least to the extent of passing on properly raised union challenges—which cannot be ousted by a subsequent settlement agreement between the Secretary and the employer. At the same time, the court announces that in the absence of employee/union assertion of party status the commission jurisdiction which attaches when an employer files a notice of contest evaporates at such time as the Secretary and the employer enter into a settlement agreement.

Much can be said for the position announced by the court—a position which assumes that in the absence of objection from an interested party there is no reason for the Commission to second-guess the judgment of the Secretary that a particular settlement agreement will promote the purposes of the Act. On the other hand, there are counter-arguments which suggest the utility of an independent check on the Secretary's discretion. Such counter-arguments seem to be reflected in the Commission's rule in force when this settlement agreement was entered into, which contemplated that all settlement agreements arrived at after the Commission's jurisdiction attached would be submitted to the Commission for approval.[6] And the revised rule now in force, endorsed by the Secretary prior to its adoption by the Commission on December 5, 1979, recites that, "A settlement proposal shall be approved [by the administrative law judge or the Commission] when it is consistent with the provisions and objectives of the Act." [7]

Where the balance of wisdom—and, to the extent detectable, of statutory instruction—lies on this issue, I have no settled view. More to the point, I do not regard it as necessary to resolve the issue in the context of this case, since in this instance I would hold that, because Local 8–901 had elected party status and had raised a cognizable objection to the settlement proposal, the Commission remained seized of the jurisdiction it had acquired before the settlement agreement was entered into—at least until the Secretary undertook to withdraw from the settlement agreement.

6. Commission Rule 100, 29 C.F.R. § 2200.100, in effect at the time of the proposed settlement in this case, provided in full:

Settlement

(a) Settlement is encouraged at any stage of the proceedings where such settlement is consistent with the provisions and objectives of the Act.

(b) Settlement agreements submitted by the parties shall be accompanied by an appropriate proposed order.

(c) Where parties to settlement agree upon a proposal, it shall be served upon represented and unrepresented affected employees in the manner set forth in § 2200.7. Proof of such service shall accompany the proposed settlement when submitted to the Commission or the Judge.

7. The revised rule, 29 C.F.R. § 2200.100, which became effective on January 1, 1980, 44 Fed. Reg. 70,106 (1979), provides in full:

Settlement

(a) *Policy.* Settlement is permitted at any stage of the proceedings. Settlements submitted for consideration after the Judge's decision has been directed for review shall be filed with the Executive Secretary. A settlement proposal shall be approved when it is consistent with the provisions and objectives of the Act.

(b) *Requirements.* Every settlement proposal submitted to the Judge or Commission shall include, where applicable, the following:

(1) A motion to amend or withdraw a citation, notification of proposed penalty, notice of contest, or petition for modification of abatement;

(2) A statement that payment of the penalty has been tendered or a statement of a promise to pay; and

(3) A statement that the cited condition has been abated or a statement of the date by which abatement will be accomplished.

(c) *Filing; service and notice.* When a settlement proposal is filed with the Judge or Commission, it shall also be served upon represented and unrepresented affected employees in the manner prescribed for notices of contest in § 2200.7. Proof of service shall accompany the settlement proposal. A settlement proposal shall not be approved until at least 10 days following service of the settlement proposal on affected employees.

## C.

I concur in the court's holding that the Secretary, in the exercise of his duty to enforce the Act, is entitled to withdraw from a settlement agreement with an employer which he concludes does not protect the safety and health of employees with the efficacy called for by the Act. I also concur in the court's view that the Secretary's occasional exercise of the authority to withdraw from an agreement solemnly entered into should be tempered by the need to protect the employer from loss occasioned by the employer's detrimental reliance on the agreement the Secretary proposes to jettison. Accordingly, inasmuch as prior to the unfolding of this very litigation Sun would presumably have had no ground for anticipating that the Secretary would turn out to have not only the disposition but also the authority to change his official mind. I concur in holding that the Secretary must go back to the *status quo ante* if he persists in his announced withdrawal from the Sun settlement. But the result dictated by the equities here may not necessarily apply in future instances of withdrawal, should there be any: for today's holding now makes it patent that OSHA settlement agreements are not proof against Secretarial second thoughts. Wherefore, I would reserve to another day, when an answer is insistently called for, the question whether a return to the *status quo ante* is required of, or even open to, the Secretary in all situations in which he concludes that an OSHA settlement agreement was improvidently entered into.

## SUR PETITION FOR REHEARING

Before SEITZ, Chief Judge, and ALDISERT, ADAMS, GIBBONS, ROSENN, HUNTER, WEIS, GARTH, HIGGINBOTHAM and SLOVITER, Circuit Judges, and POLLAK, District Judge.

ALDISERT, Circuit Judge.

The petition for rehearing filed by the Occupational Safety and Health Review Commission in the above entitled case having been submitted to the judges who participated in the decision of this court and to all the other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is denied.

## OPINION SUR DENIAL OF PETITION FOR REHEARING

ADAMS, Circuit Judge.

I would grant the petition for rehearing filed by the Occupational Safety and Health Commission because I believe that precluding the Commission from proceeding with an appeal in the context presented here raises a serious question relating to the effective administration of an important congressional enactment. This is especially so when the role of labor unions has also been restricted by the decision of the Court in this case.