Gavin A. RUOTOLO, etc., Plaintiff,
Appellee,

v.

Gavin A. RUOTOLO et al.,
Defendants, Appellees,

United States of America, Intervenor,
Appellant.

No. 77–1445.

United States Court of Appeals,
First Circuit.

Argued Jan. 6, 1978.

Decided March 22, 1978.

Freddi Lipstein, Atty., Appellate Section, Civil Division, Dept. of Justice, Washington, D. C., with whom Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., George J. Mitchell, U. S. Atty., Portland, Me., Leonard Schaitman, and Judith S. Feigen, Attys., Appellate Section, Civil Division, Dept. of Justice, Washington, D. C., were on brief, for intervenor, appellant.

John J. Flaherty, Portland, Me., with whom Gerald F. Petrucelli, Joel C. Martin, and Preti & Flaherty, Portland, Me., were on brief, for Gavin A. Ruotolo, et al., defendants, appellees.

Before COFFIN, Chief Judge, ALDRICH and CAMPBELL, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

In this Chapter XI bankruptcy proceeding, the United States appeals from an interlocutory order of the District Court for the District of Maine, denying a petition to disqualify Richard E. Poulos, a retired referee in bankruptcy, and the law firm with which he is associated, from serving as counsel for the Debtor in Possession, Gavin A. Ruotolo. The United States has no pecuniary interest in the bankrupt estate and was not an original party to the bankruptcy proceeding. It moved, and the bankruptcy court granted it permission, to intervene after a creditor, Monmouth Capital Corporation, had petitioned to disqualify Poulos. Monmouth's petition was based on a provision in Section 39b of the Bankruptcy Act, 11 U.S.C. § 67(b), which reads in part,

"Active full-time referees shall not exercise the profession or employment of counsel or attorney, or be engaged in the practice of law; nor act as trustee or receiver in any proceeding under this title. Active part-time referees, and referees receiving benefits under paragraph (1) of subdivision (d) of section 68 of this title, shall not practice as counsel or attorney nor act as trustee or receiver in any proceeding under this title."

Monmouth alleged that Poulos was a "referee receiving benefits" within the language of the section, and was accordingly prohibited from participating in Ruotolo's cause. Responding to the petition, Poulos denied that his conduct was in violation of Section 39b and further asserted that the statute was unconstitutional in that it denied him due process and equal protection of the laws.

The United States moved and was allowed to intervene in the bankruptcy proceeding on the grounds, first, that 28 U.S.C. § 2403 authorized intervention [1] because the constitutionality of 11 U.S.C. § 67(b) was drawn in question, and second, that a party to the action (Monmouth) had "asserted a claim based on 11 U.S.C. § 67b which is administered by the Administrative Office

1. "§ 2403. Intervention by United States or a State; constitutional question.

In any action, suit or proceeding in a court of the United States to which the United States or any agency, officer or employee thereof is not a party, wherein the constitutionality of any Act of Congress affecting the public interest is drawn in question, the court shall certify such fact to the Attorney General, and shall permit the United States to intervene for presentation of evidence . . . and for argument on the question of constitutionality. The United States shall, subject to the applicable provisions of law, have all the rights of a party and be subject to all liabilities of a party as to court costs to the extent necessary for a proper presentation of the facts and law relating to the question of constitutionality."

of the United States Courts . . . and the United States is therefore permitted to intervene in this matter under F.R.C.P. 24(b), Bankruptcy Rule 902."[2]

Several months before the district court rendered its decision interpreting Section 39b so as to allow Poulos, and others like him, to act as counsel in bankruptcy proceedings, Monmouth advised the court that it was withdrawing its objection to Poulos' activity in the case. The district court noted Monmouth's withdrawal, but went ahead and rendered its decision. The United States alone took this appeal. We are advised, and it is uncontroverted, that Poulos has himself since withdrawn from any participation in the bankruptcy proceeding.

■ The United States does not claim that Poulos has engaged in any actual conflict of interest in this case or that, apart from purportedly violating the statute by acting as bankruptcy counsel while drawing his normal retirement pension benefits, he has acted improperly. It states in its brief that the issue is "a purely legal issue," not an issue of "ethics," and urges the desirability of "a dispositive ruling in this untested area." While we can appreciate that a ruling might be useful, we are unable to see how the case when decided below, or on this appeal, met or meets the justiciability requirements of article III, section 2, of the Constitution. We therefore dismiss the appeal.

The question of justiciability turns chiefly on whether or not there remained a viable case or controversy after Monmouth dropped its objection to Poulos' participation. Prior to that time, we may assume that Monmouth, a creditor, had standing to urge that Poulos and his law firm were barred under Section 39b from participating. We further assume that under 28 U.S.C. § 2403, and perhaps, although we need not decide the point, under Rule 24(b) also, the United States could, with the court's permission, intervene. *See In re Estelle,* 516 F.2d 480, 485–87 & n.5 (5th Cir. 1975), *cert. denied,* 426 U.S. 925, 96 S.Ct. 2637, 44 L.Ed.2d 380 (1976); *Nuesse v. Camp,* 128 U.S.App.D.C. 172, 184–185, 385 F.2d 694, 706–07 (1967); Note, *Federal Intervention in Private Actions Involving the Public Interest,* 65 Harv.L.Rev. 319, 321–24 (1951).

But after Monmouth withdrew, there could only be a continuing case or controversy if the United States, in its own right, apart from Monmouth, had standing to continue to challenge Poulos' participation in the case. The United States had no stake in the bankruptcy. Its only possible financial interest lay outside the bankruptcy, in that it might desire a refund of benefits paid to Poulos during any period that he was thought to be disqualified from receiving them. But the United States has not sought to recover benefits paid to Poulos; and of course a private bankruptcy proceeding would not be the place to do so, even assuming such benefits would be recoverable. *See* 5 U.S.C. §§ 8346, 8347.

■ The Government argues that it has a strong interest in obtaining a ruling on this question. This may be so, but the desirability of an advisory opinion is not a substitute for justiciability. To be sure, a chief purpose behind intervention statutes such as § 2403 and Rule 24(b) is to enable the United States or one of its agencies to

---

**2.** Fed.R.Civ.P. 24(b) provides that,

"When a party to an action relies for ground of claim or defense upon any statute . . . administered by a federal . . . governmental officer or agency . . . the officer or agency upon timely application may be permitted to intervene in the action."

In its petition, the United States claimed

"an interest in the proceedings through its agency, the Administrative Office of the United States Courts and the ability of the United States to protect the interest of that agency in maintaining a corps of retired referees who are free from conflicts of interest and who are able to serve as referees. . . ."

The duties of the Director of the Administrative Office of the United States Courts appear in 28 U.S.C. §§ 604 *et seq.* It is not clear to what extent, if any, these predominantly administrative duties can be said to encompass the interpretation and enforcement of 11 U.S.C. § 67(b). The Administrative Office of the United States Courts is not a regulatory agency nor is it expressly empowered to play a watchdog role relative to court officers.

intervene to prevent constitutional or legal issues of potential significance from being decided with only limited input from private litigants, who may care little or nothing about the principles at stake. *See generally* 3B Moore's Federal Practice § 24.-10[5] (1977); Berger, *Intervention by Public Agencies in Private Litigation in the Federal Courts,* 50 Yale L.J. 65 (1940). There is, however, a difference between permitting the United States to play an active role during the pendency of private litigation, and permitting it to go forward with the litigation in its own right after the private parties have composed their differences. To do the latter, we think the Government must possess some independent basis as a party apart from its status as intervenor under the two statutes in question. *Boston Tow Boat Co. v. United States,* 321 U.S. 632, 64 S.Ct. 776, 88 L.Ed. 975 (1944); 7A Wright & Miller, Federal Practice & Procedure § 1923 at 632–33; *see* Shapiro, *Some Thoughts on Intervention before Courts, Agencies and Arbitrators,* 81 Harv.L.Rev. 721, 754–56 (1968). The United States is here able to point to no independent source of authority permitting it to sue on behalf of itself or on behalf of others, in order to enforce the provisions of Section 39b of the Bankruptcy Act. There is nothing to this effect in the statutory provisions establishing the Administrative Office of the United States Courts. *See* note 2, *supra.*[3]

Not only did Monmouth withdraw, Poulos has ceased to act, rendering moot any question of the relief that Monmouth and the Government (which adopted Monmouth's complaint) sought, namely Poulos' disqualification. The Government now argues that it wishes to contest Poulos' right to retain his fee. But no issue as to the fee was raised below by any interested party (nor, indeed, by the Government); and the Unit-

ed States has no statutory basis for championing the rights of those interested in the bankrupt estate by seeking to recover, either for their or its own benefit, the fees that an attorney has received in purported contravention of Section 39b. The Government itself has no interest in the fees, and even the creditors' right to argue for their repayment is uncertain. *See In Matter of First Colonial Corp. (American Benefit Life Insurance Company v. Baddock),* 544 F.2d 1291 (5th Cir.), *cert. denied,* 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977). *Compare In re Rogers-Pyatt Shellac Co.,* 51 F.2d 988 (2d Cir. 1931); *In re H. L. Stratton, Inc.,* 51 F.2d 984 (2d Cir. 1931), *cert. denied, Jonas & Neuberger v. General Motors Acceptance Corporation,* 284 U.S. 682, 52 S.Ct. 199, 76 L.Ed. 576 (1932).

We recognize that the United States may sometimes sue without statutory authority or a pecuniary interest, *see SEC v. United States Realty & Improvement Co.,* 310 U.S. 434, 60 S.Ct. 1044, 84 L.Ed. 1293 (1940); *United States v. New Orleans Pac. Ry.,* 248 U.S. 507, 518, 39 S.Ct. 175, 63 L.Ed. 388 (1919); *In re Debs,* 158 U.S. 564, 586, 15 S.Ct. 900, 39 L.Ed. 1092 (1895). But in this case there is no national issue of great moment or urgency, no fraud on the United States, and no fiduciary duty owed to an individual such as would justify suit simply under the aegis of constitutional grant and congressional exercise of power. *Compare In re Debs, supra; United States v. American Bell Telephone,* 128 U.S. 315, 367, 9 S.Ct. 90, 32 L.Ed. 450 (1888). There appears to be no particular "obligation on the part of the United States to the public, or to any individual, or any interest of its own," *United States v. San Jacinto Tin Co.,* 125 U.S. 273, 285, 8 S.Ct. 850, 857, 31 L.Ed. 747 (1888), that would support its right to proceed on its own with this case.[4] *Com-*

---

3. Though the Office's ministerial duties might have supported the Government's intervention as advocate of a certain construction of the statute under Fed.R.Civ.P. 24(b), recognition of that circumscribed interest as advocate is not tantamount to the creation of a substantive right or duty of enforcement on the part of the Office. The Government's interest here re-

mains derivative of the parties' dispute. Were this not the case, the intervention statutes, without more, could serve as a convenient bootstrap with which to prolong litigation merely in search of a favorable precedent.

4. The Government concedes no ethical question is involved. While it argues that the statute promotes a policy to retain a pool of disin-

pare *Moe v. Confederated Salish and Kootenai Tribes,* 425 U.S. 463, 474 n.13, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976); *SEC v. U. S. Realty & Improvement Co., supra; see* Note, *Nonstatutory Executive Authority to Bring Suit,* 85 Harv.L.Rev. 1566 (1972); Shapiro, *Some Thoughts on Intervention before Courts, Agencies, and Arbitrators, supra* at 653–56; *cf. Clark v. Valeo,* 559 F.2d 642, 654–57 (D.C.Cir.) (Tamm, J., concurring), *aff'd,* 431 U.S. 950, 97 S.Ct. 2667, 53 L.Ed.2d 267 (1977).

Insofar as the United States is concerned, therefore, we think that there remains no justiciable issue in this proceeding. We recognize that the question of the interpretation of Section 39b may well arise again; but it does not seem to us to be the kind of question that must invariably evade review. The Government may be able to raise the issue either in its own right, as obligor with respect to Poulos' pension, or by intervention in other proceedings where the private parties press their claim. We hold that the district court was without jurisdiction to rule on the merits following Monmouth's withdrawal, and that we likewise lack jurisdiction to entertain the United States' appeal, *cf. United States v. Munsingwear, Inc.,* 340 U.S. 36, 39–40, 71 S.Ct. 104, 95 L.Ed. 36 (1950); *Idlewild Bon Voyage Liquor Corp. v. Epstein,* 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962).

*The appeal is dismissed and the decision below vacated.*

terested bankruptcy judges who may be recalled, it is a close question to what extent the statute can, will, or was intended to, promote this policy. Poulos states, in any event, that he will decline recall. It is not suggested that it is unseemly for Poulos to engage in gainful employment generally while receiving these partially earned pension benefits. We thus have, at bottom, a statutory question—of some importance, to be sure, to those affected, but not of the kind which has led to recognition of a right on the part of the United States to act without specific authority.

Indeed, even if the question in this case were seen as going to Poulos' fitness to practice, the format of a bar disciplinary proceeding would seem to be an available alternative. It is not necessary to strain to carve out a unique role for the United States in order to ensure public confidence in the courts.