Raymond J. DONOVAN, Secretary of Labor, Petitioner,

v.

OIL, CHEMICAL, AND ATOMIC WORKERS INTERNATIONAL UNION AND ITS LOCAL 4-23, Respondent.

No. 83-4226.[1]

United States Court of Appeals, Fifth Circuit.

Nov. 7, 1983.

1. This case initially involved two appeals: No. 83-4142, in which the Secretary appealed the commission's order directing the parties to brief the issues accepted for review; and No. 83-4226, which is the Secretary's appeal from the Commission's denial of his motion to vacate its review order. At oral argument, counsel for the Secretary informed the court that No. 83-4142 had been withdrawn. Thus, only No. 83-4226 remains in this appeal.

Domenique Kirchner, Dennis K. Kade, Judith N. Macaluso, Dept. of Labor, Washington, D.C., for petitioner.

Robert E. Wages, Denver, Colo., for respondent.

Bennett W. Cervin, Arlene S. Holcomb, Dallas, Tex., for intervenor-petitioner American Petrofina Co. of Texas.

Before RUBIN, TATE and JOLLY, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

To further its purpose of assuring every working person "safe and healthful working conditions," Congress enacted the Occu-

pational Safety and Health Act of 1970, 29 U.S.C. § 651 *et seq.* (1970) (the Act). The Act provides for both an enforcement arm, under the Secretary of Labor, and an adjudicatory arm, under the Occupational Safety and Health Review Commission (the Commission) established by § 7(a)(1) of the Act, 29 U.S.C. § 656(a)(1). The Secretary is responsible for promulgating workplace safety standards, which he enforces by inspecting employers' premises and by issuing citations and proposed penalties for violations. Employers are entitled to contest a citation at a hearing before an Administrative Law Judge of the Commission.[2] The Commission, in its discretion, may then review the ALJ's order. The Act also accords employees[3] certain rights to participate in both the enforcement and adjudicatory stages of the administrative process. In this case, we must determine whether the Act permits employees to challenge the terms of a settlement agreement struck between the Secretary and the employer, once the employer has withdrawn its contest to the citation.

## I.

As a result of inspections conducted in the fall of 1979, the Secretary of Labor issued four citations and notifications of proposed penalties to American Petrofina Company of Texas (the Company) for violation of safety regulations promulgated by the Secretary. In response, the Company filed notices of contest to the citations, which are prerequisites for an administrative hearing.[4] The citations were consolidated into two cases and set for two separate hearings before two different ALJ's.[5] After the employer had filed the notices of contest, but before each hearing, the Oil, Chemical, and Atomic Worker's International Union and its Local 4–23 (the Union) exercised the employees' right under § 10(c) of the Act, 29 U.S.C. § 659(c), to participate as parties to the proceedings.[6]

2. Non-contested citations become final and unreviewable in any tribunal. *See infra* note 4 and accompanying text.

3. Because for present purposes the rights and duties of employees under the Act largely encompass those of their representatives, we use the term "employees" to include their representatives.

4. Section 659(a) provides that the citation and proposed assessment "shall be deemed a final order of the Commission and not subject to review by any court or agency" if, within fifteen days of receipt of the Secretary's notice, the employer fails to file a notice of contest or the employees do not file a subsection (c) notice. Subsection (b) contains a similar provision, without the reference to employees, for employers that receive notice from the Secretary that they have failed to correct a violation.

5. The cases were designated OSHRC Docket No. 79–6847 and No. 80–1671. In No. 79–6847, citation 1, item 1, alleged that the Company seriously violated § 5(a)(1), 29 U.S.C. § 654(a)(1), which requires employers to furnish employment "free from recognized hazards that are causing or likely to cause death or serious physical harm to employees," by hoisting materials over the heads of employees. Citation 1 also alleged the following serious violations of the Secretary's standards: (1) failure to clear debris (29 C.F.R. 1926.25(a)); (2) failure to protect employees against falls (29 C.F.R. 1926.28(a) and 1926.105(a)); (3) failure to

guard an abrasive disk (29 C.F.R. 1926.303(b)); (4) failure to store oxygen cylinders properly (29 C.F.R. 1926.350(j)); (5) use of defective welding cable (29 C.F.R. 1926.351(b)(4)); and (6) failure to guard open-sided platforms (29 C.F.R. 1926.451(a)(4)). Citation 1, items 9a, 9b, and 9c, alleged that the Company seriously violated the asbestos standard by failing to conduct monitoring in the fluid catalytic cracking unit of employees who were removing asbestos insulation or working in areas where asbestos was being removed (29 C.F.R. 1910.-1001(f)(1), .1001(f)(2)(1), .1001(f)(3)(i)). Citation 2 charged the Company with two nonserious violations based on (1) failure to guard electrical equipment (29 C.F.R. 1926.400(a)), and (2) using defective ladders (29 C.F.R. 1926.-450(a)(2)).

In No. 80–1671, Citation 1 alleged that the Company violated 29 C.F.R. 1910.25(d)(1)(x) by using a defective ladder. Citation 2 alleged that the Company seriously violated the asbestos standards in the fluid catalytic cracking unit by (1) failing to conduct initial monitoring (29 C.F.R. 1910.1001(f)(1)); (2) failing to collect representative samples (29 C.F.R. 1910.1001(f)(3)(i)); (3) failing to label asbestos-containing materials (29 C.F.R. 1910.1001(g)(2)(i)); and (4) failing properly to dispose of asbestos waste (29 C.F.R. 1910.1001(h)(2)).

6. Pursuant to § 10(c), 29 U.S.C. § 659(c), the Commission promulgated Rule 20, which provides: "Affected employees may elect to par-

Before the respective hearings, the Secretary and the Company agreed to settle both the cases. In return for a reduction of the citations from "serious" to "non-serious" and elimination of the penalties, the employer agreed to withdraw its notices of contest. The Union had participated in the negotiations, but refused to join the agreements on the grounds that their terms were inconsistent with the Act.[7] After a hearing on the first citation, the ALJ rejected the Union's objections and approved the agreement. At the second hearing, another ALJ upheld the second agreement, and refused the Union's proffer of evidence purporting to show that certain asbestos-related violations were properly characterized as serious and that the Company had failed to take appropriate corrective measures when removing asbestos.

Undaunted, the Union next sought to invoke the Commission's discretionary authority to review the ALJ's rulings.[8] The Commission granted the Union's petition, provoking the Secretary to file a motion to vacate the order for review. From the Commission's denial of his motion, the Secretary brings this appeal.

## II.

■ The threshold issue is whether the Commission's denial of the Secretary's motion constitutes an appealable agency ruling. The judicial review provision of the Act allows "[a]ny person adversely affected or aggrieved by an order of the Commission issued under subsection (c) of section 659 [§ 10(c) of the Act] of this title" to obtain review in the courts of appeals.[9] Section 10(c) requires the Commission, if an employer contests a citation, to hold a hearing

and "thereafter to issue an order, based on findings of fact, affirming, modifying, or vacating the Secretary's citation or proposed penalty, or directing other appropriate relief."[10] Because the Commission's order denying the Secretary's motion did not affirm, modify, or vacate the Secretary's citation or proposed penalty or order any other relief, it is not final and ordinarily would not be appealable. *See Stripe-A-Zone v. OSHRC,* 643 F.2d 230, 232–33 (5th Cir.1981).

■ The Secretary contends that the Commission's decision is nevertheless reviewable under the "collateral order" doctrine of *Cohen v. Beneficial Finance Industrial Corp.,* 337 U.S. 541, 545–47, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528, 1535–37 (1949). "To come within the 'small class' of decisions excepted from the final-judgment rule by *Cohen,* the order must [1] conclusively determine the disputed question, [2] resolve an important question completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351, 357 (1978) (footnote omitted). *See also Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* —— U.S. ——, ——, 103 S.Ct. 927, 935, 74 L.Ed.2d 765, 777 (1983).

The Second Circuit recently applied this test in a case remarkably similar to the present appeal, ruling that a Commission order remanding a proposed settlement agreement to the ALJ for consideration of the union's objections to the methods of abatement satisfied all three *Cohen* requirements. *Donovan and Mobil Oil Corp. v.*

---

ticipate as parties at any time before the commencement of the hearing before the judge, unless, for good cause shown, the Commission or the judge allows such election at a later time. See also § 2200.21. [Intervention: appearance by non-parties]" 29 C.F.R. § 2200.20 (1981).

**7.** Specifically, the Union objected in No. 79–6847 to reduction of the asbestos-related violations' reclassification from serious to nonserious and the agreement's statement that the

violations had been abated. In the No. 80–1671 agreement, the Union disputed the terms that vacated asbestos-related violations and recharacterized the remaining asbestos-related violations as nonserious.

**8.** *See* 29 U.S.C. §§ 659(c) and 661(i).

**9.** 29 U.S.C. § 660(a).

**10.** *See infra* note 23 for a full quote of § 10(c), 29 U.S.C. § 659(c).

*OSHRC and PTEU,* 713 F.2d 918 (2d Cir. 1983) (*Mobil Oil*). Specifically, the court found that: the Commission's order conclusively determined the scope of the Secretary's authority to settle without Commission oversight or the employees' formal participation; the appeal presented an important question because it would resolve an impasse between two federal agencies, thus facilitating the Act's administration; and the issue of the Secretary's authority would not merge into a final judgment on the merits. *Id.* at 924–25. The third element of the *Cohen* test was more fully discussed by the Third Circuit in *Marshall and American Cyanamid v. OCAW and OSHRC,* 647 F.2d 383 (3d Cir.1981) (*American Cyanamid*). The court reasoned that the Commission's order "irrevocably infringed" the Secretary's prosecutorial discretion because subsequent review of the final order would not have retroactive effect: the passage of time would obliterate the Secretary's negotiating position with the employer without accomplishing abatement. *Id.* at 387. *See also Marshall and IMC v. OSHRC,* 635 F.2d 544 (6th Cir.1980) (*IMC*) (reviewing Commission order to remand case to allow employee representative to prosecute citation originally issued by the Secretary but subsequently withdrawn).

We reach the same result. Although the Commission has not yet issued a remand order, and therefore conceivably could approve the settlements, it has "conclusively determined" the disputed question. The Secretary is not arguing the validity of the settlement agreements on this appeal. Instead the issues here are the standing of the employees' representative to contest the agreement, and the Secretary's authority to conclude such an agreement shielded from review when the employer withdraws its notice of contest. By denying the Secretary's motion to vacate the review order, the Commission has, in effect, ruled on the issue of its jurisdiction to review settlement agreements and the proper scope of employee participation; those were the issues briefed by the Secretary in his motion to vacate the review order.

The Second Circuit's reasoning on the second prong of the *Cohen* test applies to the present case. In essence, the issues are identical and the need to settle them is evidenced by their recurrence in the various circuits. Additionally, because the arguments advanced by the parties in the present case are separable from the merits of the settlement agreement dispute, we need not consider the Union's objections to the agreements in ruling on this appeal.

Finally, we think *Cohen*'s third requirement is satisfied. The complicated procedural history of this appeal presents a wrinkle not present in the cases discussed above. This case is a consolidation of two different hearings before the ALJ's, on two separate agreements that settled two distinct citations. At the first hearing, the ALJ considered the Union's objections and proffers of proof but, nevertheless, upheld the agreement; hence a remand is unlikely. In the second proceeding, on the other hand, the ALJ refused the Union's proffer of evidence. Should the Commission disapprove the agreements, therefore, it might remand for a hearing on the second agreement. In that event, this case would become like *American Cyanamid* and *IAM,* and the reasoning relied upon in those cases by the Third and Sixth Circuits would apply here. If, however, the Commission upheld the settlement agreements, then the issues here presented would escape review entirely because the Secretary could not appeal a victory.

This court's per curiam opinion in *Stripe-A-Zone v. OSHRC,* 643 F.2d 230 (5th Cir. 1981) does not control the disposition of this appeal. In *Stripe-A-Zone,* the employer appealed a Commission order vacating the ALJ's refusal to process a second citation based on essentially the same facts as one previously withdrawn by the Secretary. The employer argued that its right not to be prosecuted twice for the same violation had been violated and therefore, although the Commission's order was not final, the appeal fit within the *Cohen* exception. We refused to accord *Stripe-A-Zone* the same absolute double jeopardy rights as a criminal defendant, and pointed out that the

expense and trouble of litigation were simply part of the price of life under government. 643 F.2d at 233. Because Stripe-A-Zone's rights could be adequately protected by an appeal from a final Commission order, we ruled that it had failed to satisfy the third *Cohen* requirement. *Id.* at 234. By contrast, the Secretary is not merely seeking to avoid the annoyance of litigation—although his argument subsumes that objection; he is arguing that his statutory authority will be usurped and that the Commission will be exceeding its jurisdiction if the employees are allowed to obtain review of the settlement agreements before the Commission. *See Engelhard Industries v. OSHRC and Lcl. 962, ICUW,* 713 F.2d 45, 48 & n. 4 (3d Cir.1983) (refusing to apply *Cohen* doctrine to allow employer to seek review of OSHRC decision remanding case for hearing of factual issues raised by union's objections; distinguishing the Secretary's right to settle cases and hence to seek interlocutory appellate review of Commission orders interfering with that right, as necessary to the Act's enforcement.)

Moreover, uniformity in procedural rules has independent value for litigants should not be required to determine their federal procedural right by reference to the jurisprudence of the circuit having jurisdiction of the appeal. We conclude, therefore, that the collateral order doctrine applies to this case. Accordingly, we proceed to consider the merits.

### III.

Simply stated, this appeal raises two questions: (A) what is the scope of employee participation bestowed by § 10(c) of the Act, 29 U.S.C. § 659(c); and (B) what is the effect, if any, on those rights of an employer's withdrawal of its notice of contest? Because resolution of these issues requires us to interpret § 10(c) in light of its statutory context, a brief review of the Act will inform our discussion.

Congress placed primary responsibility for enforcement of the Act in the hands of the Secretary. *Dale M. Madden Construction, Inc. v. Hodgson,* 502 F.2d 278, 280 (9th Cir.1974). He sets the standards for workplace safety,[11] enforces compliance by inspecting places of employment and by investigating reports of hazards, and prosecutes violations by issuing citations and proposing penalties to transgressing employers.[12] If the cited employer fails to file a notice of contest, the Secretary's citation and proposed penalty become final and unreviewable in any court.[13] The Act implicitly authorizes the Secretary to compromise, mitigate, or settle.[14] He has further authority to seek an injunction in federal district court when a practice or condition threatens to cause death or serious physical injury.[15]

Congress also has provided for employee participation in both the enforcement and adjudicatory stages of the administrative process. Participation in the enforcement stage includes the right to accompany the Secretary when he inspects the workplace;[16] and if the conditions present imminent danger of causing physical harm, the employee may request the Secretary to inspect.[17] If the Secretary refuses to honor an employee request for an inspection, he must provide an informal hearing and ex-

---

**11.** 29 U.S.C. § 655(a). *See also* 29 U.S.C. § 655(b)(6) (authorizing the Secretary to grant a temporary variance from the standards he promulgates).

**12.** 29 U.S.C. §§ 658(a) and 659(a) & (b).

**13.** *See supra* note 4.

**14.** Section 6(e) provides:

Whenever the Secretary promulgates any standard, makes any rule, order or decision, grants any exemption or extension of time, or compromises, mitigates, or settles any penalty assessed under this chapter, he shall include a statement of the reasons for such action, which shall be published in the Federal Register.

29 U.S.C. § 655(e). *See Dale M. Madden Construction, Inc. v. Hodgson,* 502 F.2d 278, 280 (9th Cir.1974).

**15.** 29 U.S.C. § 662(a)–(c).

**16.** 29 U.S.C. § 657(e).

**17.** 29 U.S.C. § 657(f).

plain his reason.[18] Employees who believe that they have been discharged in retaliation for exercising their rights under the Act may file a complaint with the Secretary, who must bring an action in federal district court if a subsection has been violated.[19] Finally, if the Secretary arbitrarily or capriciously fails to seek injunctive relief in the face of imminent danger of serious physical harm, any injured employee can bring a mandamus action in federal district court to compel him to do so.[20]

The rights of employees at the adjudicatory stage are set forth in § 10(c), the interpretation of which lies at the heart of this appeal. The adjudicatory stage is governed by the Commission, which is an independent body responsible for appointing hearing officers, promulgating rules of procedure to govern hearings, and for reviewing orders of the hearing officers.[21] The Commission also has authority to assess the civil penalties proposed by the Secretary.[22]

### A.

The first part of this dispute concerns the interpretation of § 10(c). Section 10 of the Act, 29 U.S.C. § 659, is titled Enforcement Procedures. Subsection (c), the full text of which is set forth in the note,[23] permits an employer to notify the Secretary that he intends to contest a citation. It also permits any employee to contest the period of time fixed in the citation for abatement of the violation. In either event, the Commission must afford "an opportunity for a hearing." Finally, it requires the Commission to provide affected employees or their representatives "an opportunity to participate as parties to hearings under this subsection."

The parties agree that the subsection provides for two kinds of proceedings: one initiated by an employer's filing of a notice of contest, and one commenced by the employees' protest that the period set in the citation for abatement of the violation is unreasonable.[24] The Secretary parts company with the Union and the Commission, however, on the extent of employee participation in the employer-initiated proceeding. The Secretary contends that employee participation is limited to challenging the reasonableness of the period for abatement of the violation in both kinds of proceedings.[25]

18. *Id.*

19. 29 U.S.C. § 660(c)(1), (2).

20. 29 U.S.C. § 662(d).

21. 29 U.S.C. § 661.

22. 29 U.S.C. § 666(i).

23. (c) If an employer notifies the Secretary that he intends to contest a citation issued under section 658(a) of this title or notification issued under subsection (a) or (b) of this section, or if, within fifteen working days of the issuance of a citation under section 658(a) of this title, any employee or representative of employees files a notice with the Secretary alleging that the period of time fixed in the citation for the abatement of the violation is unreasonable, the Secretary shall immediately advise the Commission of such notification, and the Commission shall afford an opportunity for a hearing (in accordance with section 554 of Title 5 but without regard to subsection (a)(3) of such section). The Commission shall thereafter issue an order, based on findings of fact, affirming, modifying, or vacating the Secretary's citation or proposed penalty, or directing other appropriate relief, and such order shall become final thirty days after its issuance.

Upon a showing by an employer of a good faith effort to comply with the abatement requirements of a citation, and that abatement has not been completed because of factors beyond his reasonable control, the Secretary, after an opportunity for a hearing as provided in this subsection, shall issue an order affirming or modifying the abatement requirements in such citation. The rules of procedure prescribed by the Commission shall provide affected employees or representatives of affected employees an opportunity to participate as parties to hearings under this subsection.

24. *See, e.g., Marshall v. Sun Petroleum Products,* 622 F.2d 1176, 1185 (3d Cir.), *cert. denied,* 449 U.S. 1061, 101 S.Ct. 784, 66 L.Ed.2d 604 (1980).

25. The Secretary has switched positions on this issue during the course of this appeal. In his brief, he conceded that "[i]n the hearing on an employer's contest of a citation, employees who elect party status are *not* limited in the interests they may assert to the length of the abatement period." Petitioner's brief at 28 (emphasis in original). Both at oral argument and in a supplemental brief filed in response to a question from the court on another issue,

The Union and the Commission read the statute to provide for plenary participation by employees in employer-initiated proceedings, but concede, as they must, that employees may not initiate proceedings for the purpose of objecting to anything other than the reasonableness of the abatement.

The circuits are divided on this question. The Second, Third, and Sixth favor the Secretary's position; the District of Columbia has followed the view urged by the Union and adopted by the Commission. In *Marshall and Lcl. 8–901 OCAW v. Sun Petroleum Products Co. and OSHRC*, 622 F.2d 1176, 1185–88 (3d Cir.), *cert. denied*, 449 U.S. 1061, 101 S.Ct. 1061, 66 L.Ed.2d 604 (1980) (*Sun Petroleum*) and *American Cyanamid, supra*, 647 F.2d at 388, the Third Circuit read the specific provision conferring on employees the right to challenge reasonableness of the abatement period as limiting the more general directive to the Commission concerning employee participation "as parties." To support its interpretation, the court quoted the Senate Committee Report, which states that § 10(c) " 'gives an employee or representative of employees a right, whenever he believes that the period of time provided in a citation is unreasonably long, *to challenge the citation on that ground* " 627 F.2d at 1186.[26] In *American Cyanamid*, the Third Circuit further noted that the Act provides other means by which employees can protect their interests. 647 F.2d at 388 (*e.g.*, under § 657(f), employees may initiate the citation process by requesting the Secretary

to inspect). Both the Second and Sixth Circuits interpreted § 10(c) in the context of the Act's overall structure. In *Mobil Oil, supra*, the Second Circuit described the Act as vesting broad rule-making, investigatory, and enforcement powers in the Secretary, but according employees a specific, narrow role in the enforcement process. 713 F.2d at 926–27.[27] See also *IMC, supra*, 635 F.2d 544, 551 (6th Cir.1980) to the same effect. The Second Circuit reasoned that broader employee participation would inhibit the Secretary's ability expeditiously to effect the Act's remedial purposes because the Act stays all requirements to abate pending the Commission's final resolution of the proceedings.[28] 713 F.2d at 927.

The District of Columbia offered a different view of § 10(c) in *OCAW v. OSHRC*, 671 F.2d 643 (D.C.Cir.1982), *cert. denied sub nom., American Cyanamid Co. v. OCAW*, —— U.S. ——, 103 S.Ct. 206, 74 L.Ed.2d 165 (1983). The court described the subsection as establishing a two-tier scheme: (1) employees may challenge the reasonableness of the abatement period at any time within fifteen days of the citation's issuance, or (2) employees may participate fully as parties *if* the employer contests the citation. *Id.* at 648. "The employees' request for party status," it said, "confers jurisdiction on the commission to entertain the employees' objections on all matters relating to the citation in question." *Id.* See also *Sun Petroleum Products, supra*, 622 F.2d at 188–93 (Pollack, J. dissenting) (same).

---

however, the Secretary maintained that employees' participation is limited in all cases to challenging the abatement period. As our disposition of the issue *infra* demonstrates, the Union has not been prejudiced by this reversal.

**26.** *Quoting* Subcomm. on Labor of the Senate Comm. on Labor and Public Welfare, 92d Cong., 1st Sess., Legislative History of the Occupational Safety and Health Act of 1970 at 155 (emphasis added) [hereinafter cited as Legislative History].

**27.** Specifically, the Second Circuit listed the following limitations on employee participation under OSHA:

[E]mployees do not have a private right of action. *Marshall v. OSHRC, supra*, 635 F.2d

at 550–51 (citing *Taylor v. Brighton Corp.*, 616 F.2d 256 (6th Cir.1980)). They may not compel the Secretary to adopt a particular standard. *OCAW v. OSHRC, supra*, 671 F.2d at 649 (citing *National Congress of Hispanic Am. Citizens v. Usery*, 554 F.2d 1196 (D.C. Cir.1977)). As parties, they may not prosecute a citation once the Secretary decides to withdraw it, *Marshall v. OSHRC, supra;* nor may they continue an appeal of a Commission decision once the Secretary unconditionally asserts that he will not prosecute the citation regardless of the decision by the court of appeals, *OCAW v. OSHRC, supra*, 671 F.2d at 650–51.

**28.** *See* 29 U.S.C. § 659(b).

The D.C. Circuit read the same legislative history as supporting its contrary interpretation. It read the excerpt relied upon by those other circuits, when placed in context, to suggests that the drafters of the bill envisioned the two-tier approach adopted in *OCAW v. OSHRC:*

> If the employer decides to contest a citation or notification, or proposed assessment of penalty, the Secretary must afford an opportunity for a formal hearing under the Administrative Procedure Act. Based upon the hearing record the Secretary shall issue an order confirming, denying, or modifying the citation, notification, or proposed penalty assessment. The procedural rules prescribed by the Secretary for the conduct of such hearings must make provision for affected employees or other representatives *to participate as parties.*
>
> Section 10(c) *also* gives an employee or representative of employees a right, whenever he believes that the period of time provided in a citation for abatement of a violation is unreasonably long, to challenge the citation on that ground. Such challenges must be filed within 15 days of the issuance of the citation and an opportunity for a hearing must be provided in similar fashion to hearings when an employer contests. The employer is to be given an opportunity to participate as a party.

671 F.2d at 648.[29]

We adopt the interpretation of the District of Columbia Circuit. "It is assumed Congress used words as they are commonly used and ordinarily understood." *Quarles v. St. Clair,* 711 F.2d 691 (5th Cir.1980); *United States v. Porter,* 591 F.2d 1048, 1053 (5th Cir.1977). The word "parties" usually connotes persons entitled to participate fully in litigation.[30] This view is buttressed by the more complete account of the legislative history quoted by the District of Columbia Circuit, which suggests that Congress contemplated two different applications of the

"parties" provision. The ultimate sentence of § 10(c) instructs the Commission to provide for employee participation "as parties *to hearings under this subsection.*" The subsection, as we have seen, plainly envisions two kinds of hearings—employee-initiated and employer-initiated—and it contains no language limiting the employees' participation in the employer-initiated hearings to debate over the reasonableness of the abatement period. Although we have remarked that the "express allowance of one specific objection suggests a statutory intent to foreclose at least some other objections," *Marshall v. B.W. Harrison Lumber Co.,* 569 F.2d 1303, 1307 (5th Cir. 1978), this aid to interpretation is not a stricture. We find the maxim of *inclusio unius* outweighed in the present case by the legislative history and our view of the Act's general purposes.

We do not disagree with those courts that have described the Act as vesting prosecutorial authority in the Secretary. *See, e.g., Mobil Oil,* 713 F.2d at 927. But focussing solely on the prosecution phase of the process misses the issue in this case. The Union's rights arise at the adjudicatory stage, the administration of which falls within the Commission's bailiwick. Cf. *Diamond Roofing v. OSHRC,* 528 F.2d 645, 648 n. 8 (5th Cir.1976). Moreover, we understand Congress to have attempted to erect a comprehensive structure that would allow for meaningful participation of those most personally concerned with workplace safety— the workers. *OCAW v. OSHRC, supra,* 671 F.2d at 648. It is consistent with such a balanced scheme to limit the scope of employee participation at the investigatory and citation stages of the process, yet to provide plenary participation at the adjudicatory stage. Identification of violations of workplace safety standards is peculiarly within the expertise of the Secretary, hence greater deference is in order at that phase. Reliance on the Secretary's expertise becomes less important, however, once he has

---

**29.** *See* Legislative History, *supra* note 26 at 154–55 (emphasis added).

**30.** *See, e.g.,* Webster's Third New International Dictionary 1648 ("party" as synonymous with "litigant").

determined that the employer has violated the standards and has proposed a penalty.

The Secretary argues that such a scheme would produce the "anomalous" result of according greater rights to the employees in proceedings initiated by the employer than those initiated by the employees. This is the result but it is not irrational. It illustrates the fine balance struck by Congress. The Act requires the Secretary to issue a citation once he has determined that a violation exists.[31] It assumes that the Secretary will issue a citation in the appropriate circumstances and it provides a mechanism to check his arbitrary failure to do so when the consequences are sufficiently serious.[32] Unless the citation is to be litigated, the Act confines the employees to challenging the one aspect of the citation of most immediate concern to them—how soon it will provide relief. If, however, the employer disputes the citation, the employees are provided an opportunity to have an equal voice in proceedings that might result in the modification or revocation of the citation.

Finally, we observe that the Commission has adopted the interpretation advocated by the Union.[33] We have said before that "[t]he Commission's interpretation of OSHA's provisions are entitled to deference where they are reasonable and consistent with the Act's purposes." *Central Georgia R.R. Co. v. OSHRC,* 576 F.2d 620, 624 (5th Cir.1978).[34] More recently, however, we have qualified the truism that courts defer to agency interpretation by listing several factors that control the degree of that deference. *Quarles v. St. Clair,* 711 F.2d at 706–07. "These include: the consistency of the interpretation and the length of adher-

ence to it, undisturbed by Congress; the explicitness of the congressional grant of authority to the agency, with greater deference in cases of more specific delegation; and the degree of agency expertise necessarily drawn upon in reaching its interpretation." *Id.*

Application of these factors to the present case yields a muddled picture. The Commission recently has reversed its position on its interpretation of § 10(c). *See Mobil Oil supra* at 921–22. On the other hand, Congress explicitly charged the Commission with responsibility for governing the procedures employed at the hearings. 29 U.S.C. § 659(c). But the question before us calls for little knowledge of workplace safety and, therefore, depends less heavily upon Commission expertise for its resolution. We conclude that the Commission's adoption of the Union's interpretation provides persuasive, but not controlling authority.

■ Balancing these considerations, we conclude that § 10'(c) gives employees the right to participate as parties to employer-initiated proceedings. Because the Commission has not prescribed rules specifically governing the extent of this participation,[35] we are directed by § 12(g) of the Act, 29 U.S.C. § 661, to look to the Federal Rules of Civil Procedure. The applicable rule is Rule 24(a), which covers intervention. An intervenor of right under Rule 24(a) "is treated as if he were an original party and has equal standing with the original parties." C. Wright & A. Miller, Federal Practice and Procedure § 1920 at 611 (1972). *Cf. Gilbert v. Johnson,* 601 F.2d 761, 768 (5th Cir.1979) (Rubin, J., concurring), *cert.*

---

**31.** The Act provides that if the Secretary believes an employer has violated the Act or any standard promulgated under it, "he *shall* with reasonable promptness issue a citation to the employer." 29 U.S.C. § 658(a) (emphasis added).

**32.** *See supra* note 20 and accompanying text.

**33.** *See* Mobil Oil Corp. 1982 OSHD [CCH] ¶ 26,187 at p. 33,019, *rev'd sub nom. Donovan and Mobil Oil Corp. v. OSHRC and PTEU,* 713 F.2d 918 (2d Cir.1983).

**34.** *See also Marshall v. Kantson Construction Co.,* 566 F.2d 596, 600 (8th Cir.1977); *Diamond Roofing v. OSHRC,* 528 F.2d 645, 648 n. 8 (5th Cir.1976). *Cf. Florida Power & Light Co. v. FERC,* 660 F.2d 668 (5th Cir.1981), *cert. denied sub nom., Fort Pierce Utilities Auth. v. FERC,* —— U.S. ——, 103 S.Ct. 800, 74 L.Ed.2d 1003 (1983); *Ford Motor Credit v. Milhollin,* 444 U.S. 555, 556, 100 S.Ct. 790, 792, 63 L.Ed.2d 22, 25 (1983).

**35.** *See Mobil Oil Corp., supra* at 33,026.

*denied sub nom. Gilbert v. Cleland,* 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980). Thus, employees who elect to participate as parties after the employer files its notice of contest are entitled "to litigate fully" the merits of the citation and hence the terms of the settlement agreement. *See* C. Wright & A. Miller, *supra* at 612.

### B.

█ The final, and in this case dispositive, question is whether the employer's withdrawal of its notice of contest stripped the Union of its standing to challenge, and consequently divested the Commission of jurisdiction to review, the substance of the settlement agreement. The Secretary argues that, even under the D.C. Circuit's interpretation, the employees' rights are yoked to the status of the employer's participation: even if the notice of contest opens the door to plenary employee participation, once the employer withdraws its notice the door is slammed shut and the employees are relegated to challenging the reasonableness of the abatement period only.

Were we writing on a clean slate, we would be inclined to uphold the Union and Commission position, and to rule that an employee may seek review of the terms of a settlement agreement notwithstanding the employer's withdrawal of its notice of contest. Because the Commission has not promulgated rules concerning the employer's withdrawal of notice,[36] our analysis of §§ 10(c) and 12(g) leads us to this result.

The employee is in a position analogous to an intervenor in a civil lawsuit in which the original parties have settled or sought dismissal. The Secretary argues that, because an intervenor must have an independent jurisdictional basis for continuing the cause of action, apart from its status as intervenor after the original parties have resolved their dispute, the employees' action here must fail because the Act allows them independently to invoke the Commission's jurisdiction only to challenge the abatement period. Wright and Miller, however, describe the caselaw on when and whether an

intervenor's claim can proceed to decision after dismissal of the original action as "scanty and unsatisfactory." C. Wright & A. Miller, *supra,* at 613. The Third Circuit has observed that "[t]he weight of authority in the United States Courts of Appeals supports the principle that an intervenor can continue to litigate after dismissal of the party who originated the action. *U.S. Steel v. EPA,* 614 F.2d 843, 845 (3d Cir. 1979), citing *Magdoff v. Saphin Television & Appliance, Inc.,* 228 F.2d 214 (5th Cir. 1955) and *Hunt Tool Co. v. Moore, Inc.,* 212 F.2d 685 (5th Cir.1955).

In *U.S. Steel,* intervenor Scott Paper filed its motion to intervene in a petition for review of an EPA action well past the 60-day time limit (which the court seemed to regard as jurisdictional) for petitions to seek judicial review had expired. The original petitioner, U.S. Steel, however, had filed in time; hence Scott had filed its motion while the court had jurisdiction. Soon thereafter, U.S. Steel moved to dismiss its petition for review and EPA opposed Scott's continuation of the action. Because Scott filed its motion while the court had jurisdiction (it thus had not attempted to cure a jurisdictional defect by intervention), and because the intervention clearly was an effort to protect Scott's interests—which were similar but not identical to U.S. Steel's—the court upheld its right to continue the action.

Relying on *Ruotolo v. Ruotolo,* 572 F.2d 336 (1st Cir.1978), the Secretary argues that an intervenor requires an independent jurisdictional basis for continuing the cause of action. In that case, the United States sought to appeal a district court's decision to allow a retired referee in bankruptcy, one Poulos, and his law firm to represent the Debtor in Possession in a Chapter XI proceeding. The creditor had withdrawn its motion objecting to Poulos's representation, and Poulos himself had withdrawn from any participation in the proceedings. The First Circuit ruled that the case failed to meet the case or controversy require-

---

**36.** *Id.*

ment of art. III, section 2 of the U.S. Constitution. Although the court did say that the case would be justiciable only if the United States had standing to participate in the case in its own right apart from the creditor's motion, the court's subsequent analysis distinguishes that opinion from the present case. The court reasoned that, because the United States had no stake in the bankruptcy and sought to challenge only the legal issue of the retiree's participation while receiving retirement benefits, to allow the appeal would render the outcome an advisory opinion. *Id.* at 338.

In the present case, by contrast, the employees do have a stake in the terms of the settlement agreement; they are not seeking an advisory opinion from the Commission. Furthermore, under our view of § 10(c), the statute itself makes the employees full parties to the proceeding to enable them to protect their interests. Moreover, it would be inconsistent with that view to permit the employer to reach an ex parte agreement with the Secretary. Therefore, we regard the present case as more like *U.S. Steel.*[37]

The statutory language is susceptible of either construction, and either result can be viewed as part of a coherent statutory scheme. The Secretary's interpretation, even after taking into account our ruling in the previous section, is logical if § 10(c) is regarded as granting conditional intervenor status to the employees, the condition being the continued participation of the employer. *Cf.* C. Wright & A. Miller, *supra,* at 611 (discussing conditional intervention). Such status makes sense if the employees' role is viewed, as the Secretary has suggested it ought to be, as that of a "gadfly." *Cf. NLRB v. OCAW,* 476 F.2d 1031, 1036 (1st Cir.1973). The interpretation that we are inclined to favor also appears sound if § 10(c) is regarded as designed to accommo-

date the employees' legitimate interest in ensuring workplace safety. By conditioning their full participation on the employer's filing of a notice of contest, the Act can be seen as striking a balance between expeditious prosecution of citations (allowing uncontested ones to become final and limiting the employees' participation to challenging the abatement period only) and the employees' protection of their interests when it becomes more important to do so fully by providing them an equal voice once the employer has contested the citation, and by preventing the employer and the Secretary from concluding an agreement prejudicial to the employees' interests without their participation.

Although, as we have observed above, we traditionally defer to an agency's construction of the statute that it is charged to administer, we will decline to do so in the face of compelling reasons to the contrary.[38] As our foregoing discussion indicates, we believe that the Commission's interpretation, here advocated by the Union, is reasonable and consistent with a coherent view of the statute.

Nevertheless, we feel constrained to adopt the Secretary's interpretation because we find a compelling reason to do so in the unanimity of the authorities behind the Secretary's position. The decisions of the Second, Third, and Sixth Circuits limiting employee participation to challenges to the abatement period in all cases *a fortiori* do not permit full employee participation once the employer has withdrawn its notice of contest pursuant to a settlement. And the D.C. Circuit, in a dictum, has agreed expressly with the Secretary. *OCAW v. OSHRC,* 671 F.2d at 650 n. 7. The Second Circuit, discussing this very issue in *Mobil Oil,* summed up the arguments supporting its position: "Continuation of the commis-

---

**37.** Here, as in *U.S. Steel,* the intervenor could not have joined the action had the original party not invoked the tribunal's jurisdiction, but the Secretary does not contend, nor could he, that the Union's election of party status was an attempt to cure a jurisdictional defect. At that time, the employer had not yet with-

drawn its notice of contest; the Commission, therefore, had jurisdiction to hear the employee's objections under our ruling in Part III.B., *supra.*

**38.** *Florida Power & Light Co. v. FERC, supra,* 660 F.2d 668, 679.

sion's proceedings after an employer had agreed to withdraw his notice of contest so that an employees' representative or an employee may present objections to a settlement agreement not only puts off the day when abatement should finally occur, but also prevents the Secretary from taking any steps to compel abatement .... Moreover, employers would only be discouraged from entering settlement negotiations with the Secretary if they knew further proceedings before the commission could be required." 713 F.2d at 927. Thus, in the Second Circuit's view, the Union's position would produce an unworkable result: the Secretary would be unduly hampered in his ability to enforce the Act. That this is no small consideration is evidenced by the Secretary's assertion that roughly nine out of every ten cases are settled prior to a hearing. Petitioner's Supplemental Brief at 2.[39]

In an administrative territory as vast as is OSHA, the need for uniformity is apparent. Were we to march to the beat of our own drummer, a gross disparity would arise between the Secretary's ability to settle cases in this circuit and his ability to do so elsewhere. Therefore, rather than profess telepathy from the collective mind of the 1970 Congress, we acknowledge that the Act can reasonably be interpreted more than one way, and we adopt a course that at least will not precipitate administrative chaos.

For the above reasons, we hold that employees may participate fully as parties once the employer has filed a notice of contest, and hence are not limited to challenging the reasonableness of the abatement period at such a proceeding. If the employer subsequently withdraws its notice of contest, however, the employees are limited to challenging the abatement period;[40] and the Commission loses jurisdiction to entertain the employees' petition for review of the settlement agreement's terms. For the foregoing reasons, the order of the Commission denying the Secretary's motion to vacate the review order is VACATED, and the case REMANDED for the Commission to dismiss the petition.

E. GRADY JOLLY, Circuit Judge, concurring in part and dissenting in part:

I concur in the result.

I agree with Part II that the order appealed from is reviewable.

I disagree with and dissent from the conclusion of Part III A that the union in this case may challenge the citation on grounds other than the reasonable length of the abatement. The Second Circuit's reasoning in *Donovan v. OSHRC*, 713 F.2d 918 (2d Cir.1983) is sounder, more persuasive and truer to the statutory scheme than the majority opinion here. Furthermore, it is wholly unnecessary to discuss or reach the issue here since it is not determinative of the outcome of the case. Whether, therefore, Part III A is dicta is a matter over which parties and courts may later argue.

Finally, I agree with the result reached in Part III B but not in its belief that the more plausible view of the issue there presented is that a union may seek review of the terms of a settlement agreement notwithstanding the employer's withdrawal of the notice of contest.

**39.** We do not disagree with the Second Circuit that the Secretary might find settlement less easily achieved under the Union's interpretation. Rather, our perspective on the Act recognizes a statutory purpose to accord the employees a greater role at the adjudicatory stage (marked by the employer's notice of contest) and thus to balance competing interests.

**40.** We note but do not decide, that this holding may raise issues of timeliness under § 10(a) and (b) if the employer withdraws its notice of contest after the time period for filing employee-initiated contests has expired. The Third Circuit has said that the employer's notice tolls the time period. *Sun Products, supra,* 622 F.2d 1176, 1185–86.