Raymond J. DONOVAN, Secretary of Labor, Petitioner,

v.

INTERNATIONAL UNION, ALLIED INDUSTRIAL WORKERS OF AMERICA AND ITS LOCAL 370, Respondent.

No. 82–2265.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 13, 1983.

Decided Dec. 13, 1983.

Matthew R. Robbins, Goldberg, Previant, Uelmen, Gratz, Miller & Brueggeman, S.C., Milwaukee, Wis., for the Intern. Union, Allied Industrial Workers of America and its Local 370.

T. Timothy Ryan, Jr., Sol. of Labor, Karen I. Ward, Associate Sol. for Special Appellate and Supreme Court Litigation, Allen H. Feldman for Appellate Litigation, Charles I. Hadden, U.S. Dept. of Labor, Washington, D.C., for Raymond J. Donovan, Secretary of Labor.

Before BRIGHT, ARNOLD, and FAGG, Circuit Judges.

BRIGHT, Circuit Judge.

The Secretary of Labor appeals from an order of the Occupational Safety and Health Review Commission (Commission) reversing an administrative law judge's (ALJ's) approval of the Secretary's settlement of an occupational safety and health citation and remanding the case to an ALJ for consideration of objections by the respondent Union to the settlement. Following precedent in two other circuits, *Donovan v. OSHRC,* 713 F.2d 918 (2d Cir.1983); and *Marshall v. Sun Petroleum Products Co.,* 622 F.2d 1176 (3d Cir.), *cert. denied,* 449 U.S. 1061, 101 S.Ct. 784, 66 L.Ed.2d 604 (1980), we vacate the Commission's order and reinstate the settlement.

*I. Background.*

Whirlpool Corporation manufactures home appliances at a plant in Fort Smith, Arkansas. In July 1978, a compliance officer of the Occupational Safety and Health Administration (OSHA) conducted an inspection of the Fort Smith plant. The inspection led to the Secretary's issuance of a citation against Whirlpool, on August 2, 1978, for violations of 29 U.S.C. § 654(a)(2).[1] The citation alleged that Whirlpool had exposed employees at the Fort Smith plant to impermissibly high levels of carbon monoxide. The citation characterized the violation as "serious," proposed a penalty of $800, and required abatement of the violation by August 30.

Whirlpool gave the Secretary timely notice of its intent to contest the citations and the proposed penalty.[2] Ordinarily, such notice would trigger a hearing before a Commission ALJ, but in this case the Secretary and Whirlpool agreed to a settlement before any hearing was held. The settlement provided that the Secretary would change the characterization of the violation from "serious" to "other" than serious, and reduce the proposed penalty from $800 to $0. Whirlpool, for its part, agreed to abate the carbon monoxide hazard by installing, with-

---

1. Section 654(a)(2) requires employers to meet the occupational safety and health standards promulgated under the Occupational Safety and Health Act, 29 U.S.C. §§ 651–678.

2. Under 29 U.S.C. § 659(a), a citation and penalty assessment issued by the Secretary automatically becomes a final order of the Occupational Safety and Health Review Commission, unless the employer within fifteen working days of receiving notice of the citation informs the Secretary of its intent to contest the citation or penalty, or unless an employee or employee representative within the same fifteen days files a notice alleging that the period of time fixed in the citation for the abatement of the violation is unreasonable.

in 60 days of approval of the settlement, catalytic converters on 23 forklift trucks and plexiglass wind deflectors on 15 forklift trucks, and to notify affected employees of the settlement by posting a copy of the settlement agreement. A Commission ALJ approved the settlement on June 11, 1979.

On July 10, 1979, the International Union and Local 370 of the Allied Industrial Workers of America (the "Union") petitioned the Commission for discretionary review of the ALJ's order approving the settlement. The Union, which represents employees at the Fort Smith plant, objected only to the change in the characterization of the violation from "serious" to "other," and to the concomitant reduction of the penalty. Commissioner Cottine granted review.

On September 29, 1982, the Commission, by a 2–1 vote, disapproved the settlement and remanded the case with instructions to the ALJ to consider the Union's objections to the recharacterization of the violation and the reduction of the penalty. The Commission gave two reasons for rejecting the settlement: (1) the posting of the agreement did not, under Commission rules, constitute notice to the Union of the settlement; and (2) the record did not show that the Union had received notice of an amendment to the settlement agreement reducing from 15 to 14 the number of forklift trucks on which plexiglass wind deflectors were to be installed. Because the Union did not receive formal notice of the terms of the settlement and the amendment, the Commission said, it had been deprived of its rightful opportunity to raise objections to the settlement. Commission Chairman Rowland dissented, arguing that the Union had actual notice of the settlement terms, and that, in any event, it had no right under the statute to object to any provision of the settlement other than the reasonableness of the abatement time.

The Secretary appeals from the Commission's September 29 order. He urges us to adopt Commissioner Rowland's position

that, regardless of any inadequacies of notice to the Union, the Union has no right to object to, nor the Commission to review, any aspect of a settlement between the Secretary and an employer where, as here, no objection has been raised to the reasonableness of the abatement time.

## II. *Discussion.*

### A. *Appealability of the Commission's Order.*

The Union contends that this court lacks jurisdiction to review the Commission's order, because the order, in remanding the case to the ALJ, does not finally determine the merits of the case.[3] We believe, however, that the Commission's order falls within the class of "collateral" orders reviewable under the doctrine of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

In *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978), the Supreme Court defined the scope of the collateral order exception:

> To come within the "small class" of decisions excepted from the final-judgment rule by *Cohen,* the order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment.

We think the Commission's order meets the three *Coopers & Lybrand* criteria. First, the order "conclusively determines" the issue before us—whether a union has a right to present objections, on issues other than the reasonableness of the abatement time, to a settlement entered into by the Secretary and an employer. Second, the issue of the Union's right to be heard, which presents an important question of statutory construction and of the respective powers of the Secretary and the Commission, is completely separate from the merits of the underlying dispute over whether the violation was "serious" and whether it warrants a

---

**3.** 29 U.S.C. § 660(b) provides for review or enforcement, at the Secretary's petition, of

"any final order of the Commission."

civil penalty. Finally, the question of the Union's right to object to settlement will likely not be reviewable on appeal of a final judgment. If the ALJ, after hearing the Union's objections, again upholds the settlement, the Secretary will not stand aggrieved and so will not have grounds to appeal. If the ALJ disapproves the settlement, and the case goes to the Commission for a full hearing on the merits of the original citation, the Secretary will have to await a decision on the merits to appeal. But if the Secretary wins on the merits of the original citation (that is, if the violation is adjudicated "serious" and a penalty assessed), he will not be in a position to argue that Whirlpool should have the benefit of the more favorable terms of the rejected settlement. On the other hand, if the Secretary decides the case is not worth prosecuting on the merits—perhaps a reason why he was willing to settle in the first place—he will never get a final order of any kind and will never have the opportunity to raise the issue which is before the court now.

Therefore, we conclude that the Commission's remand order is reviewable here, notwithstanding that it does not finally adjudicate the merits of the Whirlpool citation. Our failure to reach the question of the Union's right to object to an OSHA settlement in these circumstances would likely leave an important issue in the administration of the Act undecided. We follow the Second, Third, and Sixth Circuits, then, and hold the remand order reviewable. *See Donovan v. OSHRC, supra,* 713 F.2d at 922–25; *Marshall v. OCAW,* 647 F.2d 383, 386–

87 (3d Cir.1981); *Marshall v. OSHRC,* 635 F.2d 544 (6th Cir.1980).[4]

### B. *Union Participation Under § 659(c).*

Under 29 U.S.C. § 659(a), an employer has fifteen days after receipt of notice of citation or proposed penalty assessment from the Secretary to notify the Secretary of its intention to contest the citation or penalty. If the employer files no such notice, and no employee or employee representative files a section 659(c) notice, "the citation and the assessment, as proposed, shall be deemed a final order of the Commission and not subject to review by any court or agency." Thus in the absence of employer objection (and of employee filing under section 659(c)), the Secretary's citation and penalty take effect without the matter ever coming before the Commission or any of its ALJs at all. That is, barring employer objection to the citation or penalty or employee objection to the reasonableness of the abatement time, the Commission lacks jurisdiction to review the Secretary's action.

The question this appeal presents concerns what happens when the employer initially does object, but later settles its dispute with the Secretary before the matter ever actually reaches the Commission. Does the Commission still have jurisdiction to review the Secretary's action (as it clearly would had the employer not withdrawn its contest by settling), and, if so, how far does its review power extend? The answer to these questions rests largely on the interpretation of section 659(c), which provides,

4. The Third Circuit's recent decision in *Engelhard Ind. v. OSHRC,* 713 F.2d 45 (1983) is not to the contrary, as that court made clear by expressly distinguishing *Engelhard* from its earlier decision in *Marshall v. OCAW, supra. See Engelhard, supra,* 713 F.2d at 48, n. 4. In *Marshall* the Commission's remand order was reviewable, because the Secretary there, as here, sought review to vindicate his claim of statutory authority to conclude a settlement free from Commission-ordered union participation. In *Engelhard,* by contrast, it was the employer, not the Secretary, who sought review of a remand order disapproving a settlement to which the union objected. The *Engelhard* court reasoned that whereas the Secretary's objection to Commission disapproval of

a settlement sought to advance important governmental interests in the administration of the Act (and thus merited review of the remand order), an employer has no right under the Act to be free from litigation, and so cannot object to the undoing of a settlement if the Secretary does not so object. The court therefore concluded that its refusal to review the remand order at the employer's sole request did not threaten to have important rights or interests unvindicated. We express no view on the question the *Engelhard* court decided; we merely take note of the distinction it drew between *Engelhard* and its earlier *Marshall* decision, which decision squares precisely with our holding of reviewability in the case before us now.

If an employer notifies the Secretary that he intends to contest a citation issued under section 658(a) of this title or notification issued under subsection (a) * * * of this section, or if, within fifteen working days of the issuance of a citation under section 658(a) of this title, any employee or representative of employees files a notice with the Secretary alleging that the period of time fixed in the citation for the abatement of the violation is unreasonable, the Secretary shall immediately advise the Commission of such notification, and the Commission shall afford an opportunity for a hearing (in accordance with section 554 of Title 5 but without regard to subsection (a)(3) of such section). The Commission shall thereafter issue an order, based on findings of fact, affirming, modifying, or vacating the Secretary's citation or proposed penalty, or directing other appropriate relief, and such order shall become final thirty days after its issuance. * * * The rules of procedure prescribed by the Commission shall provide affected employees or representatives of affected employees an opportunity to participate as parties to hearings under this subsection.

 Under section 659(c), Commission jurisdiction over the Secretary's action can arise in either of two ways—(1) the employer can object to the citation or penalty, or (2) an employee or employee representative can object to the reasonableness of the abatement time. Where jurisdiction is employer-invoked, the Commission may consider any objections the employer raises, and affected employees or their representatives (ordinarily the union) may "participate as parties" to the hearing. In such employer-invoked hearings, employee participation is not limited solely to objecting to the reasonableness of the abatement time, *OCAW v. OSHRC,* 671 F.2d 643, 647 (D.C. Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 206, 74 L.Ed.2d 165 (1982), though it is so limited when the employer does not file notice of contest and the matter comes before the Commission only at the instance of an employee or union. Thus, before a union has any right at all to be heard by the

Commission on any issue other than the reasonableness of the abatement time, two conditions must be met—the Secretary must issue a citation, and the employer must invoke Commission jurisdiction by filing a notice of contest. Commission jurisdiction thus depends, initially at least, on the willingness of the Secretary to prosecute a citation and of the employer to contest it.

In this case, though, neither the Secretary nor the employer manifests any such continuing willingness. The Secretary does not wish to prosecute the citation further, and the employer has withdrawn its objection. In the circumstances, we do not think the Union is entitled to a hearing before the Commission on the merits of the settlement, aside from the reasonableness of the period of abatement, an issue that the Union has chosen not to raise. We draw this conclusion from the structure and purposes of the Act.

The Act vests in the Secretary the exclusive responsibility for both promulgating and enforcing occupational safety and health standards. The Commission's sole function is to adjudicate employer contests to citations the Secretary issues, and employee contests to the reasonableness of proposed abatement times. Indeed, Congress created the Commission because some members of the Senate feared that giving the Secretary both prosecutorial and adjudicatory responsibility could lead to overzealous enforcement of the Act against employers. *See* S.Rep. No. 1282, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.Code Cong. & Ad.News 5177, 5218–5221, 5224–5227; *Donovan v. OSHRC, supra,* 713 F.2d at 930 n. 21.

 The Commission differs from such other agencies as the National Labor Relations Board and the Federal Trade Commission in that its functions are solely adjudicatory. It has neither prosecutorial nor enforcement powers, nor any policymaking role to play. *Donovan v. OSHRC, supra,* 713 F.2d at 930; *Marshall v. OSHRC, supra,* 635 F.2d at 547; *Marshall v. Sun Petroleum Products Co., supra,* 622 F.2d at 1183–84; *UAW v. OSHRC,* 557 F.2d 607, 610 (7th

Cir.1977); *Dale M. Madden Construction, Inc. v. Hodgson,* 502 F.2d 278, 280–81 (9th Cir.1974). *But see Brennan v. Gilles & Cotting, Inc.,* 504 F.2d 1255, 1262 (4th Cir.1974). The Secretary alone sets the policies and enforces them. *Donovan v. OSHRC, supra,* 713 F.2d at 927; *OCAW V. OSHRC, supra,* 671 F.2d at 649–50; *Marshall v. OSHRC, supra,* 635 F.2d at 550; *Marshall v. Sun Petroleum Products Co., supra,* 622 F.2d at 1187; *Dale M. Madden Construction, Inc. v. Hodgson, supra,* 502 F.2d at 280–81. Thus several courts of appeals have held that, unlike, for example, the NLRB, the Commission is not a real party in interest to appeals taken from its orders, and is not entitled to defend them in court any more than a trial judge is entitled to appear in court to defend his decisions on appeal. *See OCAW V. OSHRC, supra,* 671 F.2d at 651–53; *Marshall v. OSHRC, supra,* 635 F.2d at 547; *Marshall v. Sun Petroleum Products Co., supra,* 622 F.2d at 1180–84. *But see Brennan v. Gilles & Cotting, Inc., supra,* 504 F.2d at 1266–67; *Diamond Roofing v. OSHRC,* 528 F.2d 645, 648 n. 8 (5th Cir. 1976).

■ As sole prosecutor of OSHA violations, the Secretary has, as a natural incident to his enforcement powers, the discretion to withdraw or settle citations and to compromise penalties. *Donovan v. OSHRC, supra,* 713 F.2d at 927; *OCAW v. OSHRC, supra,* 671 F.2d at 650; *Marshall v. OSHRC, supra,* 635 F.2d at 550; *Marshall v. Sun Petroleum Products Co., supra,* 622 F.2d at 1187; *Dale M. Madden Construction Co. v. Hodgson, supra,* 502 F.2d at 280. Though the Act does not expressly grant settlement powers to the Secretary, he has them by implication under section 655(e), which provides:

> Whenever the Secretary * * * grants any exemption or extension of time, *or compromises, mitigates, or settles any penal-*

*ty assessed under this chapter,* he shall include a statement of the reasons for such action, which shall be published in the Federal Register. [emphasis added]

The Secretary's power to settle claims advances the central purpose of the Act, which is to "reduce safety hazards and improve working conditions." *Dale M. Madden Construction, Inc. v. Hodgson, supra,* 502 F.2d at 280. *See also Donovan v. OSHRC, supra,* 713 F.2d at 927. When the Secretary succeeds at getting a hazard abated as part of a settlement, he both advances the purposes of the Act and conserves administrative resources that, in the absence of settlement, would have to be devoted to protracted litigation. If the validity of the settlement (apart from the reasonableness of the abatement period) were subject to review by the Commission on protest from the Union, the prospect of continued litigation over the merits would likely discourage prompt settlement between employers and the Secretary.

■ We conclude, then, that it was within the Secretary's power to settle the Whirlpool citation. Just as neither the Commission nor the Union could force him to bring the citation in the first place, or to prosecute it if he decided it was not worth pursuing, neither can the Commission or the Union undo a settlement the Secretary has concluded.[5]

We fully understand the Union's concern over workplace hazards that affect the employees it represents. That concern is especially understandable in this case, where the Union alleges that it repeatedly brought the carbon monoxide hazard to Whirlpool's attention before OSHA investigated the Fort Smith plant, and that Whirlpool failed to do anything about it. Congress has, however, given employees and unions a very precisely defined and limited role in the occupational health and safety enforcement scheme.[6]

---

**5.** Of course, had the Union objected to the reasonableness of the abatement time, that aspect of the settlement would have been open to Commission review. But the Union made no such objection in this case.

**6.** Among other things, and in addition to the right to invoke Commission review of the rea-

sonableness of proposed abatement times, the Act gives employees and their representatives a role in rulemaking proceedings, § 655(b); the right to request the Secretary to conduct a workplace inspection, § 657(f)(1); and the right to participate in hearings on employer applications for variances from applicable OSHA standards, § 655(d).

The Secretary alone has the authority to set health and safety standards, and to prosecute violations of them. Once the Secretary cites an employer for a violation, only the employer can invoke Commission review of any aspect of the citation other than the reasonableness of the abatement time. Employees and unions can compel a Commission hearing only on the reasonableness of the abatement time, unless the *employer* chooses to put other issues before the Commission. The Commission's power extends only to adjudicating matters the parties put in issue. In this case, neither the Secretary nor the employer wishes to contest anything before the Commission, and the Union has chosen not to raise the only issue on which it could, on its sole instance, obtain a Commission hearing—the reasonableness of the abatement time.

However much the Union might like to object to the Secretary's decision to recharacterize the violation and to reduce the penalty, that decision was, under the Act, the Secretary's, and the Secretary's alone, to make. The Secretary has elicited from Whirlpool a definite, specific commitment to abate the carbon monoxide hazard. The Union does not challenge the effectiveness of the proposed abatement plan, or the reasonableness of the abatement time. It objects only to the characterization of the violation as other than serious, and to the elimination of the civil penalty. But the Act aims principally at eliminating hazards in the workplace, and only incidentally at censuring or punishing violators. Here, the Secretary has obtained abatement on the employer's part. The central concern of the Act is thus satisfied. The Secretary, who has exclusive responsibility for enforcement, regards the matter as satisfactorily resolved. It is not for the Commission to say that the matter must be reopened.

Several adverse consequences would follow were we to adopt the Commission's and the Union's view. First, abatement will be delayed if the Commission can set aside a settlement until the Union can be heard on non-abatement-related issues. (The employer's duty to abate does not attach until the issuance of a final Commission order.) Second, the Secretary's discretion to allocate administrative enforcement resources would be impaired, if the Commission could order a hearing where the Secretary and the employer have already resolved their dispute. Third, both the Secretary and employers would have less incentive to settle, if employees and the Commission could undo any settlement they conclude. None of these results would serve the Act's principal purpose. Within the Act's scheme, the Commission functions only as a neutral arbiter of disputes between the Secretary and employers, or between the Secretary and employees or unions on the narrow question of the reasonableness of the proposed abatement time.

The Union argues that once an employer notifies the Secretary of its intention to contest a citation or penalty, the Commission retains jurisdiction of the matter and can go ahead with a full hearing on the merits, on its own or the Union's motion, even if the Secretary and the employer have resolved the matter to their mutual satisfaction. But this argument flies in the face of the statutory conception, under which the Commission is solely an adjudicator, not an enforcer, prosecutor, or policymaker, and under which, in the absence of dispute between the Secretary and the employer, the Union is entitled to contest and the Commission to review only the reasonableness of the abatement time. We reject the Union's contention that the initial filing of an employer contest gives the Union and the Commission the right to go ahead with the case on their own, even if the Secretary has settled the matter. The Act gives the employer only fifteen days to file a contest before the citation becomes absolutely unreviewable. Therefore an employer who disputes the Secretary's findings or proposed penalty will almost always file a contest, merely to preserve its rights, even where both the employer and the Secretary know the matter likely does not merit the expense and trouble of actual litigation before the Commission. That is, employers will file contests, simply because the fifteen-day rule practically forces them to do so, even in cases where they fully intend to settle. To say that in such cases the employer inten-

tionally invoked Commission jurisdiction, and therefore must go through a full adjudication at the instance of the Union, even after the Secretary—the Act's sole enforcer—has secured a commitment from the employer to abate the hazard, would interfere needlessly with the efficient attainment of the Act's purposes.

██ We hold, therefore, that the withdrawal of an employer's contest to an OSHA citation or penalty ousts the Commission of jurisdiction to review the citation, the penalty, or the Secretary's settlement of them, except as to the reasonableness of the abatement time where an employee or a union has duly raised that issue. This holding is consistent with those of the Second and Third Circuits, *Donovan v. OSHRC, supra,* 713 F.2d at 931; *Marshall v. Sun Petroleum Products Co., supra,* 622 F.2d at 1185, and is supported by language in the District of Columbia Circuit's opinion in *OCAW v. OSHRC, supra,* 671 F.2d at 650 n. 7.

Accordingly, we vacate for want of jurisdiction the order of the Commission which disapproved the settlement and remanded the controversy for further proceedings.

ARNOLD, Circuit Judge, concurring in part and dissenting in part.

For the reasons so well stated by the Court, I agree that we have jurisdiction. But as to the merits, I respectfully dissent. If this were a case where the hearing process had been invoked by the employees or their representatives, the Union could not contest the settlement except on the ground that the abatement period was unreasonably long. In this case, however, the hearing process was triggered by a contest filed by the employer. In this situation, I do not believe that the statute, 29 U.S.C. § 659(c), limits the Union so strictly. The employees have a vital interest in the subject matter of this case, an interest that goes beyond the issue of how long the employer should be given to abate the dangerous condition. They seem to believe, and understandably so, that labelling this violation as other than serious, and relieving the employer of any penalty whatever, will not be a sufficient deterrent to the repetition of similar events in the future. No one wants to work in a plant with high levels of carbon monoxide, and the employees are naturally interested in doing everything possible to see that such a hazard does not again occur.

The Court agrees that "[i]n such employer-invoked hearings, employee participation is not limited solely to objecting to the reasonableness of the abatement time ...." *Ante,* p. 1419. If this case had gone to hearing, then, and no settlement had been agreed upon between the Secretary of Labor and the employer, the Union could have participated fully in the hearing, and could have argued that the citation as originally filed properly characterized the violation as "serious" and properly sought a monetary payment. Here, as the Court points out, the case has been settled. I cannot agree that this circumstance limits the issues that the employees are entitled to raise, when the only provision in the statute indicating that the issues should be so limited applies in terms only to proceedings initiated by the employees or their representatives. It is also significant that the statute specifically authorizes the Commission to adopt rules of procedure giving affected employees or their representatives an opportunity "to participate as parties to hearings under this subsection." The right to participate as a party, I should think, includes the right to raise all issues in which a party has an interest, except those issues specifically placed off limits by the express words of the statute.

I forego a fuller statement and refer simply to the dissenting opinion of Judge Pollak in *Marshall v. Sun Petroleum Products Co.,* 622 F.2d 1176, 1188–91 (3d Cir.), *cert. denied,* 449 U.S. 1061, 101 S.Ct. 784, 66 L.Ed.2d 604 (1980). I cannot improve on his reasoning, and I therefore respectfully dissent in this case.